## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

SOUTH CAROLINA REPUBLICAN PARTY;

*Plaintiff*,

v.

ROBERT BOLCHOZ, in his official capacity as Chairman of the South Carolina State Election Commission; JOANNE DAY, CLIFFORD J. EDLER, SCOTT MOSELEY, and ANGELA STRINGER, in their official capacities as members of the South Carolina State Election Commission; and CONWAY BELANGIA, in his official capacity as Executive Director of the South Carolina State Election Commission,

*Defendants,*
and

VETERANS FOR ALL VOTERS, and THE CHAMBERLAIN NETWORK,

*Putative Intervenors.*

**Case No.:** 3:26-cv-2699-MGL

**INTERVENOR-DEFENDANTS' PROPOSED MOTION TO DISMISS**

TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

    I.   South Carolina's Semi-Open Primary Elections...........................................2

    II.  Prior Litigation............................................................................................3

    III. Amended Party Rules .................................................................................4

SUMMARY OF ARGUMENTS...........................................................................................5

    I.   Plaintiff's Complaint....................................................................................5

    II.  Summary of Intervenors-Defendants' Arguments.........................................6

LEGAL STANDARD .........................................................................................................9

ARGUMENT ...................................................................................................................10

    I.   The Party lacks standing to assert its claims................................................10

        A.  The Party only alleges speculative, hypothetical injuries..............................11

        B.  The Party cannot establish causation because its alleged injuries result from its own voluntary choice, not the challenged statutes.............................13

    II.  Plaintiff's Counts I–IV are collaterally estopped and must be dismissed. ...................14

        A.  *SCGOP I* litigated the same constitutional issues raised by the Party in Counts I-IV. .............................................................16

        B.  This Court has already determined the issues and they were necessary to Judge Childs' Order..............................................17

        C.  Judge Childs' decision was full and final, and made after the parties had a full and fair opportunity to litigate the disputed issues. .........................18

    III. Plaintiff fails to state a plausible claim for relief under *Anderson-Burdick*. ..............19

        A.  The Party alleges only marginal, hypothetical burdens on its First and Fourteenth Amendment rights. .......................................20

B. The State has an important interest in semi-open primaries, and the Intervenor-Defendants have a compelling one. ...............................................22

CONCLUSION....................................................................................................................25

# INTRODUCTION

The South Carolina Republican Party (the Party) does not get to exclude voters from state-run primaries. *Greenville Cnty. Republican Party Exec. Comm. v. South Carolina*, 824 F. Supp. 2d 655, 666 (D.S.C. 2011) ("*SCGOP I*"); *see also Elmore v. Rice*, 72 F. Supp. 516 (D.S.C. 1947) (Waring, J.), *aff'd* 165 F.2d 387 (4th Cir. 1947). As Judge Waites Waring explained in *Elmore* when striking down the Democratic Party's exclusion of Black voters from its primaries, "[a] primary conducted in accordance with state law is distinctly a part of the election machinery." 72 F. Supp. at 516. Because state-run primaries are part of the electoral process, the State has an obligation "to protect the rights of individual voters to cast a meaningful ballot," *SCGOP I*, 824 F. Supp. 2d at 671–72, and to ensure that "*all* elections" are "free and open," so that every qualified South Carolinian has an equal right to elect public officials. S.C. Const. art. I, § 5 (emphasis added).

The Party's "right not to associate" with people it doesn't like, *see Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000), cannot override the fundamental voting rights of primary voters (like members of Veterans for All Voters and The Chamberlain Network) or the State's interest in protecting those rights. If the Party wants greater control over who participates in selecting its nominees, South Carolina law authorizes the Party to select its candidates by convention or by petition. *See* S.C. Code Ann. § 7-11-10 (2023). The First Amendment is not, however, a sword that the Party can use to force the State to impose its chosen purity test for primary participation. Because the challenged laws impose, at most, slight burdens on the Party's associational rights while protecting significant State interests and the voting rights of Intervenor-Defendants, the Court should dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). *See Johnston v. Lamone*, 401 F. Supp. 3d 598, 604 (D. Md. 2019) (dismissing challenge to a Maryland election law at pleading stage), *aff'd* 801 F. App'x 116 (4th Cir. 2020).

1

## STATEMENT OF FACTS

### I.     South Carolina's Semi-Open Primary Elections

South Carolina's state-run primary elections are neither mandatory nor fully open. They are not mandatory because "political parties are not required to nominate candidates by primary; that is true at the state, county, and municipal levels of government." *SCGOP I*, 824 F. Supp. 2d at 665–66; *see* S.C. Code Ann. § 7-11-10 (2023). And they are semi-open, not fully open, because although "any qualified elector is allowed to vote in the party primary of his or her choice; . . . the elector may vote *in only one* party primary during any single election cycle." *SCGOP I*, 824 F. Supp. 2d at 659 (emphasis added) (citing S.C. Code Ann. §§ 7-11-10, 7-9-20, 7-13-1010)). The Supreme Court has described South Carolina's system not as a classically open primary, but one that allows an otherwise unaffiliated voter "to vote in a party primary if he affiliates with the party at the time of, or for the purpose of, voting in the primary." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 222 n.11 (1986) (citing S.C. Code §§ 7-5-120, 9-20, which are materially the same today).

South Carolina's primaries are administered and funded by the State, primarily through the County and State Election Commissions. S.C. Code § 7-13-15. If a political party does not wish to participate in the state-funded primary process, it may instead nominate its candidates by convention or by petition. *Id*. § 7-11-10. To nominate candidates by convention, three-fourths of the party's convention membership must vote to use the convention nomination process. *Id*. § 7-11-30. The Party does not allege in its Complaint that it has ever attempted to change its nomination process from the state-run primaries.

The statutory scheme also authorizes any political party to "add by party rules to the qualifications for membership in the party" and "for voting at the primary elections if the qualifications do not conflict with the provisions of this section or with the Constitution and laws of this State or of the United States." *Id*. § 7-9-20. However, the State itself has never established a formalized system for party registration. *See* Compl. ¶ 14, Dkt. No. 1.

## II.     Prior Litigation[1]

This is not the Party's first bite at this apple. In June 2010, the Party filed a Complaint in this District against the State and the Chairman of the State Election Commission, alleging that the State's semi-open primary system violated the Party's rights to freedom of association and equal protection.[2] *See SCGOP I*, 824 F. Supp. 2d 655. The plaintiffs moved for summary judgment, asserting "that South Carolina's primary election statutes are unconstitutional on their face" and asking "the court to enter a declaration of unconstitutionality and to enjoin Defendants from enforcing the statutes." *Id.* at 661. The defendants filed their own cross-motion, seeking "a broad declaration that the State statutes challenged by Plaintiffs are constitutional on their face." *Id*. at 663 n.5. After oral argument, Judge Childs issued a written Order on March 30, 2011 (hereinafter, *SCGOP I*).

In her decision, Judge Childs analyzed the primary election statutes and held that they did not unconstitutionally burden political parties' First and Fourteenth Amendment rights to association and equal protection. *Id*. Applying the *Anderson-Burdick* framework, she found that any burden imposed by the challenged statutes was slight, and the statutes were adequately justified by legitimate state interests. *Id*. at 662–63, 671–72. She also rejected the plaintiffs' alternative argument that S.C. Code § 7-11-20, which allows parties to fashion party rules related to primaries, already allowed the Party to operate closed primaries. *Id*. at 666. In doing so, she relied on the plain language of the statute, which requires party rules to be "in accordance with and not in

---

[1] As set forth in the Legal Background Section, *infra*, this Court may consider this prior litigation without converting this Motion from a Rule 12 Motion to a Rule 56 Motion because it is a matter of public record. *Briggs v. Newberry Cnty. Sch. Dist.*, 838 F. Supp. 232, 233–34 (D.S.C. 1992), *aff'd,* 989 F.2d 491 (4th Cir.1993).

[2] The Greenville County Republican Party Executive Committee, Patrick B. Haddon, in his official capacity as the Chairman of the Greenville County Republican Party, and William "Billy" Mitchell joined the Party as additional plaintiffs in the suit. *SCGOP I*, 824 F. Supp. 2d at 659. Pursuant to these other plaintiffs' interests, they challenged certain laws related to the candidate nomination process by municipalities that are not relevant to this litigation.

conflict with State law." *Id.* Because party rules closing primaries would "conflict with multiple provisions of Title 7 of the South Carolina Code of Laws," she held that they are impermissible under Section 7-11-20. *Id.*

In *SCGOP I*, Judge Childs ultimately denied the plaintiffs' and granted the defendants' motions. The plaintiffs then moved to alter or amend the judgment, and after full briefing, Judge Childs denied the motion while clarifying aspects of her earlier decision. *Greenville Cnty. Republican Party Exec. Comm. v. South Carolina*, C.A. No. 6:10-cv-01407-JMC, 2011 WL 2910360, at *1, 3 (D.S.C. July 18, 2011) ("*SCGOP II*"). Specifically, Judge Childs explained that *SCGOP I* resolved only the plaintiffs' facial challenges, and held "that the statutes, viewed individually and in the context of the entire legislative scheme, did not unconstitutionally inhibit Plaintiffs' freedom of association or violate the equal protection guarantees of the Constitution." *Id.* at *3. In addition, she found that "the restrictions imposed by the statutes at issue are reasonable and non-discriminatory," and she identified three specific interests as "important" ones:  1) protecting and preserving the integrity of the nominating process, 2) increasing voter participation, and 3) ensuring administrative efficiency. *Id.*

Though the litigation between some of the plaintiffs and defendants continued, the Party abandoned the case a year after *SCGOP II* by filing a stipulation of dismissal under Federal Rule of Civil Procedure 41. *See Greenville Cnty. Republican Party Exec. Comm. v. South Carolina*, 604 Fed. App'x 244, 249–50 (4th Cir. 2015). Despite the case's protracted history, the Party conspicuously fails to mention the prior orders of a court in this District in its Complaint.

III.    **Amended Party Rules**

This summer, the Party amended its party rules in an attempt to "limit[] Republican primary participation to Republican Party members." Compl. ¶ 40, Dkt. No. 1. Those Rules are incorporated into the Complaint as Exhibit A.

Under New Rule 11-A-6, the Republican Party cannot certify any candidate who has not been a registered Republican for at least 90 days, and who has voted in at least two of the last three

4

statewide Republican primaries. Dkt. No. 1-1 at 2. It makes exceptions for underage voters and active-duty military, and otherwise allows for a waiver prior to the candidate certification deadline. *Id.* Under New Rule 11-A-7, "[n]o elector shall vote in a Republican primary who is not a registered Republican." *Id.* The Rule defines a "registered Republican" as an otherwise-eligible voter "who has affiliated with the Republican Party by way of the state voter registration process, or will become so by virtue of voting in the Republican Primary." *Id.* The Rule also gives the State Executive Committee the authority to "adopt appropriate procedures and time-frames for registration by electors with the Party." *Id.* Though the New Rules were ratified in convention on June 27, 2026 and went into effect on July 1, 2026, there has not been an opportunity or attempt to enforce them.

SUMMARY OF ARGUMENTS

### I.     The Party's Complaint

Days after ratifying its new party rules, the Party filed this Complaint on July 6, 2026. In it, the Party raises five causes of action (Counts I–V) and seeks declaratory and injunctive relief.[3] Though the Party divides its Complaint into five claims, they distill down to only a handful of challenges:

1.     The first is that the State's semi-open primary system violates its (and all political parties') rights of association. While Count I is labeled as a "violation of freedom of political association," its claims in Counts II and IV also turn on this alleged violation: in Count II, that the system's "compelled association" alters the Party's speech; and in Count IV, that this "compelled association" is an unconstitutional condition on ballot access and nomination procedures (Counts

---

[3] Though the Complaint technically lists six causes of action, its sixth claim is for declaratory judgment and is derivative of its first five claims.

5

I, II, and IV[4] are collectively referred to herein as the Party's "associational claims"). None of these Counts include any facts specific to the Party and instead include facial challenges that would apply equally to the statutes' enforcement against any political party.

2.    The second is that the State's system violates its (and all political parties') rights under the Equal Protection Clause of the Fourteenth Amendment, as set forth in Count III (the Party's "equal protection claim"). As in its associational claims, the Party does not include any factual allegations specific to the Party that do not apply to political parties or associations generally.

3.    The third is that the State's semi-open primary system violates the Party's right of association by precluding the enforcement of its new party rules (the Party's "party rule claim").

In order to protect the fundamental voting rights of its members, the Intervenor-Defendants moved to intervene and this Motion to Dismiss was filed therewith.

## II.    Summary of Intervenors-Defendants' Arguments

Intervenor-Defendants Veterans for All Voters and the Chamberlain Network move to dismiss this action for three reasons:

1.    The Party lacks standing to assert its claims. To establish Article III standing, a plaintiff must show that it has suffered injury in fact; that there is a causal connection between the harm alleged and the challenged law; and that its harms are redressable by a decision of the Court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Here, the Party has failed to identify a concrete, particularized harm caused by South Carolina's open primary laws. Rather, the Party's claims rest upon the assumption that voters who are not ideologically aligned with the Party *may*

---

[4] Intervenor-Defendants presume that Count IV does not assert a constitutional right to a state-administered primary election, as that is entirely foreclosed by law. *See, e.g.*, *Miller v. Brown*, 503 F.3d 360, 368 (4th Cir. 2007) (a party "has no constitutional right even to select its nominees by primary"); *Colo. Republican Party v. Griswold*, 715 F. Supp. 3d 1339, 1357 (D. Colo. 2024) (collecting cases and explaining that political parties "do[] not have a constitutional right to nominate its candidates by [state-run primary]").

vote in the Republican primary, and that their votes *may* affect the selection of the nominee in a way that *may* injure the Party. *See, e.g.*, Compl. ¶ 24, Dkt. No.1 ("A voter hostile to Plaintiff Party's principles *may* still vote in Plaintiff Party's primary so long as the voter does not also vote in another party's primary in the same election.") (emphasis added). This perceived threat to the Party is nothing more than conjecture. Because the Party cannot plausibly plead that this "hostile" voting is happening—let alone having an impact on its candidate selection—the Party has not suffered an injury-in-fact.

Additionally, the Party cannot establish a causal connection between its alleged harms and the open primary system because it *chose* to participate in state-run primaries. South Carolina can lawfully circumscribe the candidate-nomination processes available to political parties. *Am. Party of Tex. v. White*, 415 U.S. 767, 781–82 (1974). If the Party wants to insulate itself, it has a menu of other options for candidate selection. But it cannot self-inflict a harm to its constitutional rights and then claim standing to sue. *Cf. Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997) ("Because the alleged injury is caused by a voluntary choice made by the Virginia Republican Party and not the Open Primary Law, the plaintiffs have not established causation.").

*2.*     The Party's claims are barred by collateral estoppel. Under that doctrine, "once a court of competent jurisdiction actually and necessarily determines an issue, that determination remains conclusive in subsequent suits, based on a different cause of action but involving the same parties, or privies, to the previous litigation." *Bos. v. Stobbe*, 586 F. Supp. 2d 574, 580 (D.S.C. 2008) (quoting *Weinberger v. Tucker,* 510 F.3d 486, 491 (4th Cir. 2007)). Collateral estoppel "protects [against] the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979).

Collateral estoppel squarely applies. The Party already litigated (and lost) both its associational and equal protection claims before a court in this District. *See SCGOP I*, 824 F. Supp. 3d at 667. It cannot merely show up again with the same arguments that it "had a full and fair opportunity

to litigate," and urge this Court to arrive at a different result. *See, e.g.*, *South Carolinians for Responsible Gov. v. Krawcheck*, 854 F. Supp. 2d 336, 344 (D.S.C. 2012) (applying collateral estoppel to bar a facial constitutional challenge to a statute). The Party's associational and equal protection claims are collaterally estopped and must be dismissed.

3.     The Party's Complaint does not allege a plausible claim for relief. Even accepting its allegations as true, the marginal burdens to the Party's First or Fourteenth Amendment rights by the current primary regime are far outweighed by the State's interests in protecting and preserving the integrity of the nominating process, increasing voter participation, and ensuring administrative efficiency and by Intervenors' fundamental rights to vote in state-run elections. *See SCGOP I & II* (applying *Anderson-Burden* balancing test).

To start, even if the Party sufficiently asserted an injury-in-fact, *see infra* Arg. I (challenging standing), its injuries are relatively trivial. The Party does not allege that a voter that would be disqualified by the new party rule has ever voted in a Republican primary, nor does it allege (much less, *plausibly* allege) that the participation of disqualified voters has affected the results produced by the Party's primary. How could it? There is remarkable symmetry between the new party rule and the status quo. *Compare* S.C. Code §§ 7-11-10, 9-20, 13-1010 (restricting voters to only voting in *one* party's primary), *with* New Rule 11-A-7 (defining a "registered Republican" as an otherwise-eligible voter "who has affiliated with the Republican Party by way of the state voter registration process, *or will become so by virtue of voting in the Republican Primary*." (emphasis added)).

On the other side of the scale, both the State and Intervenors have compelling interests in preserving the lawful semi-open primary system. For the State, closed primaries needlessly add administrative burden, undermine its interest in electoral participation, and threaten its ability to satisfy its constitutional mandate to hold elections that are free and open to all voters. And for Defendant-Intervenors and their members, allowing private political parties to control participation in state-administered primaries would exclude them from dispositive elections and thus violate

their fundamental rights to vote under the state and federal constitutions. These interests far out-weigh the insignificant burdens (if any) endured by the Party.

Accordingly, under the *Anderson-Burdick* framework, the Party's Complaint should be dismissed.

## LEGAL STANDARD

**Fed. R. Civ. P. 12(b)(1).** A motion to dismiss under Rule 12(b)(1) asks "the fundamental question of whether a court has jurisdiction to adjudicate the matter before it." *Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC*, 509 F. Supp. 3d 547, 553 (D.S.C. 2020). "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). When subject-matter jurisdiction is challenged under Rule 12(b)(1), courts generally apply the same standard as they would on a Rule 12(b)(6) motion to dismiss. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). But when a defendant asserts that the jurisdictional allegations are not true, the court may "go beyond the allegations of the complaint and . . . determine if there are facts to support the jurisdictional allegations without converting the motion to a summary judgment proceeding." *Id*.

**Fed. R. Civ. P. 12(b)(6).** A complaint can only survive a motion to dismiss under Rule 12(b)(6) if it contains enough factual matter "to state a claim to relief that is plausible on its face." *Johnson v. Baltimore City*, 163 F.4th 808, 814 (4th Cir. 2026) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Thus, dismissal of an action under Rule 12(b)(6) is warranted if the plaintiff fails to make allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 559.

Additionally, while consideration of matters outside the pleadings will normally serve to convert a Rule 12 motion to a Rule 56 motion for summary judgment, that is not the case where the matters considered are matters of public record. *Briggs v. Newberry Cnty. Sch. Dist.*, 838 F. Supp. 232, 233–34 (D.S.C. 1992), *aff'd,* 989 F.2d 491 (4th Cir. 1993). Specifically, "[w]hen entertaining a motion to dismiss on the ground of res judicata or collateral estoppel, a court may judicially notice facts from a prior judicial proceeding" while continuing to evaluate the motion under Rule 12. *Id.* Accordingly, "[a]ffirmative defenses such as res judicata or collateral estoppel may support a movant's Rule 12(b)(6) motion to dismiss for failure to state a claim." *Sanders v. Novant Health, Inc.*, No. 0:20-cv-1287-MGL, 2021 WL 1140222, at *2 (D.S.C. Mar. 25, 2021); *see Thomas v. Consolidation Coal Co.*, 380 F.2d 69, 75 (4th Cir. 1967) ("Plaintiffs contend that res judicata cannot properly be raised in the context of a motion to dismiss, an argument which we reject as against the weight of authority.").

## ARGUMENT

### I.     The Party lacks standing to assert its claims.

Federal courts presume to "lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986)). Their Article III power to decide "cases" and "controversies" requires "that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020). "[T]he party invoking the jurisdiction of the court bears the burden of establishing standing." *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009).

To establish standing, the Party must demonstrate that (1) it has suffered injury in fact, (2) a causal connection between the harm alleged and the challenged law, and (3) that its harms are redressable by a decision of the Court. *Lujan*, 504 U.S. at 560. The court's standing inquiry is "a strict jurisdictional requirement, rigorously enforced when the court must decide if the

government's actions are unconstitutional." *Skelton v. Obama*, No. C.A. 3:09-1432-MBS, 2009 WL 2513444, at *3 (D.S.C. Aug. 12, 2009) (citing *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997)). The Party has not met its burden, as it does not allege anything more than speculative and self-inflicted injuries. These claims fall well short of establishing constitutional standing. *See, e.g.*, *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013).

### A.     The Party only alleges speculative, hypothetical injuries.

To establish an injury in fact, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quotations omitted). "A threatened future injury 'must be *certainly impending* to constitute injury in fact'; 'allegations of *possible* future injury' are not sufficient." *Md. Election Integrity, LLC v. Md. State Bd. of Elections*, 127 F.4th 534, 538 (4th Cir. 2025) (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013)). In assessing standing, the Court need not consider "sheer speculation, bald assertions, and unsupported conclusory statements." *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020).

Here, the Party's allegations do not establish a concrete, particularized injury-in-fact. The challenged statutes have been in place for decades, yet the Complaint fails to allege a single instance of the Party being forced to associate with a "non-member," much less a measurable impact on the Party's influence over selecting its nominee. Indeed, the Party does not allege the participation of a single person in a single primary whom it would choose to exclude. Rather, it only complains that the law *allows* such unaffiliated individuals to participate in the Republican nomination process, Compl. ¶ 16, Dkt. No. 1, along with vague speculation about what "may" happen as a result, *see, e.g.*, *id*. ¶¶ 14 ("may"), 18 ("may"), 24 ("may"), 25 ("may"), 26 ("may"), 36 ("may"); *id*. ¶ 34 (it "may result in" selecting a nominee that is "weaker," "more divisive," "less faithful," or "more likely to lose the general election"). That is fatal to the Court's jurisdiction. It is not enough for the Party to point out that semi-open primaries *permit* unaffiliated voters to

11

participate, it must show that such voters *in fact* have (or will) participate in the selection of the Party's candidates and explain why that participation causes a redressable injury-in-fact.

Instructively, courts have repeatedly dismissed such speculative, hypothetical claims as insufficient to establish standing. *See, e.g.*, *Bishop*, 575 F.3d at 424 (holding that voter's claim that ballot language was "potentially misleading" was insufficient to establish standing); *Lake v. Hobbs*, 623 F. Supp. 3d 1015, 1028 (D. Ariz. 2022), *aff'd sub nom. Lake v. Fontes*, 83 F.4th 1199 (9th Cir. 2023). In *Heindel v. Andino*, 359 F. Supp. 3d 341 (D.S.C. 2019), *judgment vacated on other grounds by* 2019 WL 7781470 (4th Cir. Nov. 5, 2019), for example, South Carolina voters sued the State Election Commission based on its claim that the State's voting machines were particularly vulnerable to hacking and malfunction. In dismissing the case, Judge Childs concluded that the plaintiffs asserted no more than a speculative risk that the voting machines would—either due to hacking or malfunction—undermine the integrity of their ballot. *Id.* at 352–66.

Like in *Heindel*, the Party's claim here relies on a double dose of speculation. First, the Party speculates that, because of the challenged statutes, a voter with divergent purposes *may* participate in a primary (just as a hacker *may* target the machines). And second, the Party speculates that, if such hostile participation were to happen, it *may* frustrate the associational rights of the Party and its members (just as a hacker's attack *may* successfully invalidate a voter's ballot). Alone or together, these inferential leaps cannot establish Article III standing. *Id.*; *see also Lake*, 623 F. Supp. 3d at 1028 (rejecting plaintiff's theory of standing where "a long chain of hypothetical contingencies must take place for any harm to occur").[5]

---

[5] Even if the Party alleged an injury-in-fact (it doesn't), its claims are not yet ripe. A pre-enforcement challenge is only ripe when "'any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.'" *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 547–48 (5th Cir. 2008) (quoting *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003)). Here, significant factual questions exist, including whether the semi-open primary actually burdens the Party's associational rights, whether party raiding is actually occurring, and whether the Party's new rules will even be challenged. *See id.* at 548 (holding unripe a challenge to a

**B.    The Party cannot establish causation because its alleged injuries result from its own voluntary choice, not the challenged statutes.**

Article III requires an injury "fairly traceable to the challenged action of the defendant[]," not one that "result[s from] the independent action" of the plaintiff itself. *Lujan*, 504 U.S. at 560 (cleaned up). The Fourth Circuit has applied that requirement to precisely this configuration: a political party asserting an associational injury that arises not from any statutory command, but from the party's own decisions. Where "the alleged injury is caused by a voluntary choice made by the [plaintiff] and not" by the challenged law, causation fails. *Marshall*, 105 F.3d at 906. And "where [an] alleged injury" to associational rights "is caused by the Party's voluntary choice, the Party does not establish causation." *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 632 (4th Cir. 2016).

The challenged primary system does not force the Party to associate with anyone. Contrary to the Party's allegations, it "does not have a constitutional right to nominate its candidates by [state-run primary]." *Colo. Republican Party v. Griswold*, 715 F. Supp. 3d 1339, 1357 (D. Colo. 2024) (collecting cases). Rather, state-run primaries are but *one* option available to political parties in this state. South Carolina also permits parties to nominate candidates through conventions or petitions, both of which allow the Party to restrict participation to its members. *See* S.C. Code § 7-11-10. The Party therefore alleges an associational injury only because it has voluntarily elected to use the one nomination method that carries the participation rules it challenges.

*Marshall* is instructive. 105 F.3d at 904. There, members of the Virginia Republican Party challenged the state's open primary system, arguing (like the Party here) that it allowed non-Republicans "to have a hand in deciding who the Republican candidate [is]." *Id*. at 905. On appeal, the Fourth Circuit affirmed the district court's dismissal for lack of standing. It held that the alleged injury was not fairly traceable to the open-primary law because "it [was] the decision of the

---

primary system that allegedly allowed party raiding where plaintiffs failed to show "a demonstrated impact on the conduct of primary elections"). Thus, even if the Court concludes that the Party has standing, it should dismiss its claims as unripe.

Virginia Republican Party to conduct an 'open' primary that is causing [its] alleged injury." *Id*. at 906. Accordingly, "[b]ecause the alleged injury [was] caused by a voluntary choice . . . made by the Virginia Republican Party and not the Open Primary Law, the plaintiffs ha[d] not established causation." *Id*. The court further explained that "if a political party's choice of an 'open' primary is a lawful and voluntary one, the decision of the party is the cause of the alleged 'forced' association, not the state law." *Id*.; *accord Marchioro v. Chaney*, 442 U.S. 191, 199 (1979) (a party's rights are not "substantially burdened by statute when the source of the complaint is the party's own decision").

The Fourth Circuit has affirmed this principle in subsequent cases, explaining that its "holding in *Marshall* was clear: where the alleged injury is caused by the Party's voluntary choice, the Party does not establish causation." *24th Senatorial Dist. Republican Comm.*, 820 F.3d at 632. This Court has done the same. *See Greenville Cnty. Republican Party Exec. Comm. v. Way*, No. 6:10-cv-1407-MGL, 2013 WL 12385313, *7–8 (D.S.C. Aug. 30, 2013) (dismissing for lack of standing under *Marshall*).

*Marshall*'s logic squarely applies here. Any claimed burdens on the Party's associational injuries are not caused by the State's semi-open primaries. They arise only because the Party has voluntarily chosen to select its nominees through that process. Under *Marshall* and *24th Senatorial*, that organizational choice breaks the causal chain between the challenged statutes and the alleged injury. As a result, the Party lacks standing.

## II.    The Party's Counts I–IV are collaterally estopped and must be dismissed.

This is not the first time that this Plaintiff has asked a court in this District to hold South Carolina's primary voting system unconstitutional. In *SCGOP I* and *SCGOP II*, the Party fully litigated—and lost—its facial challenges to the same statutory scheme it challenges again here. Absent any material change in law or fact, collateral estoppel bars the Party from relitigating those issues. Accordingly, this Court should dismiss the Party's associational and equal protection claims (Counts I–IV, and the corresponding requests for relief in its Declaratory Judgment and

14

Irreparable Harm sections) under Rule 12(b)(6).[6] *See Montana*, 440 U.S. at 153–54 ("To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.").

The doctrine of collateral estoppel applies to bar the re-litigation of an issue if five elements are satisfied: "(1) . . . 'the issue sought to be precluded is identical to one previously litigated'. . .; (2) . . . the issue was actually determined in the prior proceeding . . .; (3) . . . the issue's determination was 'a critical and necessary part of the decision in the prior proceeding'. . .; (4) that the prior judgment is final and valid . . .; and (5) that the party against whom collateral estoppel is asserted 'had a full and fair opportunity to litigate the issue in the previous forum.'" *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (*quoting Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)). While offensive collateral estoppel by a plaintiff requires privity of parties, "[c]ollateral estoppel may be used defensively as a bar if the plaintiff had a full and fair opportunity to litigate the issues in the previous suit;" mutuality of the parties is not required. *Thurston v. United States*, 810 F.2d 438, 445 (4th Cir. 1987); *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971). It is indisputable that all five of these elements are met.

---

[6] The only claim made by the Party that was not already litigated and decided in *SCGOP I* is the effect of the Party's adoption of Party Rules 11-A-6 and 11-A-7. Compl. ¶ 40, Dkt. No. 1. That fact relates only to its party rule claim (Count V), and does not in any way affect (nor is it even referenced in) the Party's more sweeping facial challenges to the primary system contained in Counts I-IV. While Count V is arguably not ripe for dismissal under Rule 12(b)(6) based on collateral estoppel, it should be dismissed on other grounds as set forth in Sections I & III.

### A.    *SCGOP I* litigated the same constitutional issues raised by the Party in Counts I-IV.

On the first element, the Party launches a direct, facial challenge against the State's "open-primary system" and "statutory scheme."[7] Compl. ¶¶ 10, 50, Dkt. No. 1. Specifically, the Party claims that the current system and statutes violate the protections of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. *Id*. These are precisely the issues raised and ruled upon in *SCGOP I*. There, the same Plaintiff "challenge[d] the constitutionality of South Carolina's open primary method of nomination generally" and argued that "several individual election statutes violate the Equal Protection Clause of the Constitution." *SCGOP I*, 824 F. Supp. 2d at 662–63.

The open primary method of nomination and the referenced election statutes have not changed in any meaningful way since 2011, before the *SCGOP I* decision. Thus, the *issue* in Counts I–IV—i.e., the facial constitutionality of the primary system and statutes under the First and Fourteenth Amendments—is identical to the one raised and determined in *SCGOP I* and satisfies the first element of collateral estoppel.[8] *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under

---

[7] Though unclear from the Complaint which statutes are part of this "challenged statutory scheme," Intervenor-Defendants assume it refers to the same "statutory scheme" Judge Childs described in *SCGOP I*: "the requirement that primary elections be open in South Carolina is not contained in any one statutory provision, but is effectuated through the enforcement of multiple statutes." 824 F. Supp. 2d at 663. In fact, the *SCGOP I* plaintiffs challenged more statutory provisions than the various statutes identified in the Complaint, so, to the extent they differ, the statutory scheme challenged in *SCGOP I* was even more sweeping than that identified by the Party.

[8] The Party may claim that the two lawsuits are not identical because this Complaint includes constitutional arguments that the Party did not raise in *SCGOP I* (for example, unconstitutional limits on ballot access and forced political speech). However, collateral estoppel focuses on an "identity of issues, not of arguments." *Hamze v. Cummings*, 652 F. App'x 876, 879–80 (11th Cir. 2016). "Once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992); *see also Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011) ("If a party could avoid issue preclusion by finding some argument it failed to raise in the previous litigation, the bar on successive litigation would be seriously undermined.").

16

collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.").

Though it does not specify in the Complaint, the Party may try to argue that its associational and equal protection claims challenge the open primary system both facially *and* as-applied to the Party, and therefore are not identical to the issues resolved by *SCGOP I*. But in Counts I–IV, the Party fails to allege or reference a *single* fact related to the application of the statutory scheme to its own specific conduct or circumstances.[9] *See* Compl. ¶¶ 42–68, Dkt. No. 1. Instead, it relies on generalizations about the law and the system that could apply equally in any factual context to any political party. *See id*. There is no doubt that these challenges are facial and not as-applied to the Party. *See Bowman v. United States*, 564 F.3d 765, 772 (6th Cir. 2008) (without specific facts demonstrating the application of the allegedly unconstitutional statutes to the plaintiff's situation, the "as-applied and facial claims were one and the same"); *see also Grant-Davis v. Wilson*, No. 2:19-CV-0392-DCN-TER, 2021 WL 4596614, at *8 (D.S.C. July 15, 2021), *aff'd*, 2021 WL 4260779 (D.S.C. Sept. 20, 2021) ("a plaintiff making an as-applied challenge must still plead facts sufficient to state a claim for relief that is plausible on its face"). Accordingly, the court's resolution of the facial constitutional challenges to South Carolina's primaries in *SCGOP I* also precludes (and therefore resolves) the Party's claims in Counts I–IV here.

**B.    This Court has already determined the issues and they were necessary to Judge Childs' Order.**

The second and third elements are likewise met. *SCGOP I* squarely resolved the Party's facial constitutional challenges, and those determinations were essential to the judgment. In *denying* the plaintiffs' motion for summary judgment, Judge Childs held that "South Carolina's open

---

[9] The *only* fact alleged in the Complaint that relates specifically to the Party is its adoption of Party Rules 11-A-6 and 11-A-7. Compl. ¶ 40, Dkt. No. 1. However, the Party only alleges that fact to support its party rule claim, as noted *supra* at footnote 4.

17

primary laws are not facially unconstitutional and do not violate political parties' freedom of association given the availability of other nomination methods," and that "the challenged statutes are adequately justified by legitimate state interests." *SCGOP I*, 824 F. Supp. 2d at 667, 672. Additionally, in granting the *defendants'* motion for summary judgment, she granted what she described as "a broad declaration that the State statutes challenged by Plaintiffs are constitutional on their face." *Id*. at 663 n.5, 672. Indeed, on the plaintiffs' motion for reconsideration, Judge Childs confirmed these determinations, making clear that "[t]he court determined that the statutes, viewed individually and in the context of the entire legislative scheme, did not unconstitutionally inhibit Plaintiffs' freedom of association or violate the equal protection guarantees of the Constitution." *SCGOP II*, 2011 WL 2910360, at *3. Elements two and three are therefore satisfied.

### C.     Judge Childs' decision was full and final, and made after the parties had a full and fair opportunity to litigate the disputed issues.

Finally, as to the fourth and fifth elements of collateral estoppel, the decision in *SCGOP I* was full and final for purposes of collateral estoppel and the parties had a full and fair opportunity to litigate the issues at hand. In the Fourth Circuit, "[f]inality for purposes of collateral estoppel is a flexible concept and 'may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'" *Swentek v. USAIR, Inc.*, 830 F.2d 552, 561 (4th Cir. 1987) (quoting *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir.1961)). In assessing collateral estoppel, claims adjudicated through summary judgment are regarded as final judgments on the merits. *Manbeck v. Micka*, 640 F. Supp. 2d 351, 364 (S.D.N.Y. 2009); *see also Sec. People, Inc. v. Medeco Sec. Locks, Inc.*, 59 F. Supp. 2d 1040, 1045 (N.D. Cal. 1999), *aff'd*, 243 F.3d 555 (Fed. Cir. 2000) ("A disposition by summary judgment is a decision on the merits, and it is as final and conclusive as a judgment after trial."). While Intervenor-Defendants acknowledge that Judge Childs' order in *SCGOP I* did not resolve all the parties' claims (i.e., the plaintiffs' as-applied challenges), a summary judgment order need not dispose of all the issues to be final for purposes of collateral estoppel. *See Intell.*

18

*Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1337 (Fed. Cir. 2017) ("We conclude that under Fourth Circuit law, collateral estoppel attaches in light of the [prior] court's partial summary judgment order."); *see also Pye v. Dep't of Transp. of Ga.*, 513 F.2d 290, 292 (5th Cir. 1975) ("To be final a judgment does not have to dispose of all matters involved in a proceeding." (citation omitted)). Thus, the Court's Order in *SCGOP I* is sufficiently final to apply collateral estoppel.

Additionally, the parties had a full and fair opportunity to litigate the facial constitutionality of South Carolina's semi-open primary system. The parties both briefed motions for summary judgment, and, consistent with a facial challenge, "represented to the court that there would be minimal, if any, need for fact witnesses and no need for expert witnesses." *SCGOP II*, 2011 WL 2910360, at *1. The Court held a hearing on the summary-judgment motions, submitted a written order, and the parties subsequently briefed the Party's motion to reconsider. *See id*. Later, on its own accord, the Party filed a stipulation of dismissal and withdrew from litigation. *Greenville Cnty. Republican Party Exec. Comm. v. Greenville Cnty. Election Comm'n*, 604 F. App'x 244, 250 (4th Cir. 2015). It neither sought to pursue nor preserve any opportunity to appeal Judge Childs' order on summary judgment. Therefore, the parties had a full and fair opportunity to litigate the issue such that re-litigation would be a waste of judicial resources. *See Montana*, 440 U.S. at 153–54.

For these reasons, the entirety of the Party's Complaint, aside from the Party's party rule claim contained in Count V, should be dismissed under the doctrine of collateral estoppel.

### III.    The Party fails to state a plausible claim for relief under *Anderson-Burdick*.

Even if this Court reaches the merits of the Party's claims (whether all Counts, or just Count V), those claims should be dismissed because the Party has failed to state a claim for relief. When deciding whether a state election law violates voters' rights under the First and Fourteenth Amendments, courts first must determine the "character and magnitude" of the burden the State's rule imposes on those rights. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). Then it must

19

weigh that burden against the State's interests, applying the appropriate level of scrutiny based on the burden's magnitude. *Id.*; *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Regulations imposing severe burdens on a plaintiff's rights must be narrowly tailored and advance a compelling state interest. *Burdick*, 504 U.S at 434. Lesser burdens, however, trigger less exacting review, and a State's "important regulatory interests" will usually be enough to justify "reasonable, nondiscriminatory restrictions." *Id*.

> **A.    The Party alleges only marginal, hypothetical burdens on its First and Fourteenth Amendment rights.**

**Equal Protection.** Turning first to its purported equal protection claim (Count III), the Party has not articulated a single instance of disparate treatment within South Carolina's primary system, let alone any burden imposed upon the Party because of it. *See* Compl. ¶¶ 58–64, Dkt. No. 1. The opposite is true: the Party perplexingly alleges that the State treats party members and non-members "identically." *Id*. ¶ 61. But it is axiomatic to an equal protection claim that "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). The Party's equal protection claim therefore not only fails under the *Anderson-Burdick* framework, it does not even meet the basic elements of a claim and must be dismissed. *Twombly*, 550 U.S. at 555, 559.

**Speech & Association.** Moving to the Party's associational and party rule claims, the Party asserts that the State's semi-open primary system imposes a "severe" burden on its right to association that is not narrowly tailored to any compelling state interest. Compl. ¶¶ 47, 64, Dkt. No. 1. Yet it fails to mention that a Court in this District already assessed the burden of the same system and statutes on the Party's associational rights, and found it to be "slight, at the most." *SCGOP I*, 824 F. Supp. 2d at 671. Additionally, the Party completely ignores the provisions of South Carolina law that: (1) *do* place limitations on would-be voters when participating in the party's primary; and (2) provide legitimate alternatives to the State's semi-open primaries in which a party *can* limit their association to only those people approved for party membership. *See* S.C. Code §§ 7-9-20,

7-11-30. For these reasons, the Court should find that South Carolina's primary laws impose, at most, a negligible burden on the Party's freedom to associate.

Specifically, while South Carolina voters can vote in either party's primary, the law limits them to voting in *only one* party's primary. *See* S.C. Code § 7-13-1040. Thus, by voting, a voter affiliates themselves with that party for the primary cycle. *See Tashjian*, 479 U.S. at 222 n.11 (identifying South Carolina's primary system as not an open primary, but one that allows an otherwise unaffiliated voter "to vote in a party primary if he affiliates with the party at the time of, or for the purpose of, voting in the primary"). In addition, a candidate for selection as a nominee for any political party must affiliate with that political party and must sign a party pledge. S.C. Code § 7-11-210 (*amended* S.C. Act No. 137 (H.B. 3557, 2025–2026 Gen. Assemb., 126th Sess. (S.C. 2026))). The Party's concerns, then, that hostile voters will usurp the Republican primary to elect candidates who do not best represent "Republican principles" without "making any durable declaration of party affiliation," are thus overblown and largely untrue. Compl. ¶¶ 24–26, Dkt. No. 1.

Indeed, if the Party truly thought that the current system was a "severe" burden on its rights, it would have drafted a party rule that clearly broke from it. It did not. Under Party Rule 11-A-7, the Party limits its primary voters to registered Republicans, but then defines a "registered Republican" to include anyone who will become affiliated with the Republican Party "by virtue of voting in the Republican Primary." Dkt. No. 1-1 at 2. Seemingly, every voter who chooses to vote in the Republican Primary thus qualifies, *ipso facto*, as a "registered Republican." The new party rule does not require any new registration system or affiliation mechanism. *Id.* This new rule reflects the Party's *own choice* of who it wants to include in and exclude from its primaries and it is, in effect, the same voters who have access to its primaries already. Accordingly, even if Rule 11-A-7 is barred from taking effect, it will result in no bigger burden than currently exists and has already been deemed insignificant by this Court. *See SCGOP I*, 824 F. Supp. 2d at 666.

Additionally, the Complaint fails to mention that, while the "Party's primary election is the official mechanism by which the Party chooses its nominees for the general election," it doesn't

21

have to be. Compl. ¶ 27, Dkt. No. 1. Under the law, the Party has the right to choose to nominate its candidates by convention or petition, and in doing so, can limit their association to only those people approved for party membership. S.C. Code § 7-9-20. Thus, any possible burden on its right to association is not only minimal, but optional. As a court in this District already acknowledged when reviewing the same system, "courts have repeatedly rejected attempts to facially attack state election statutes on the basis of forced association where state law provides legitimate alternatives that do not restrict freedom of association." *SCGOP I*, 824 F. Supp. 2d at 664.

In sum, as Judge Childs already found: "South Carolina's open primary laws do not facially burden political parties' right to freedom of association." *Id*. at 666. "[T]he restrictions imposed by the statutes . . . are reasonable and non-discriminatory." *SCGOP II*, 2011 WL 2910360, at *3.

### B.    The State has an important interest in semi-open primaries, and the Intervenor-Defendants have a compelling one.

Because the burden on the Party's rights is minimal at best, the State need only provide "important regulatory interests" to justify its "reasonable, nondiscriminatory restrictions." *Burdick*, 504 U.S at 434 (quoting *Anderson*, 460 U.S. at 788). As set forth in Judge Childs' opinions in both *SCGOP I* and on reconsideration, this Court has already expressly recognized three such interests: "protecting and preserving the integrity of the nominating process, increasing voter participation, and ensuring administrative efficiency." *SCGOP II*, 2011 WL 2910360, at *3; *see SCGOP I*, 824 F. Supp. 2d at 671. These interests still hold true and are of particular importance to the Intervenor-Defendants whose fundamental rights are at stake.

Specifically, the State does not just have an interest in ensuring "that elections are fair and honest," it is *obligated* to do so under the State constitution. *SCGOP I*, 824 F. Supp. 2d at 671; S.C. Const. art. I, § 5. In addition, it is "beyond question" that "'States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder.'" *Clingman v. Beaver*, 544 U.S. 581, 593 (2005) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)); *see also id*. at 364 (1997) ("States certainly have an

22

interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials."). And of specific importance to the Intervenor-Defendants, the State has an interest in encouraging voter participation. *See SCGOP I*, 824 F. Supp. 2d at 671. As the Supreme Court has recognized, "the right to vote freely for the candidate of one's choice is the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). While a court in this District has already found this to be an important State interest, it is also a fundamental, compelling interest as it relates to the Intervenor-Defendants.

If South Carolina's primaries are closed, it will infringe upon the Intervenor-Defendants' fundamental right to vote in elections of consequence. *See* Motion to Intervene. As set forth in their Motion to Intervene, the Intervenor-Defendants represent numerous independent veteran voters who are uniquely positioned to lose their right to participate in the primary process if the Party is granted the relief that it seeks. *Id*. And when the primary is *the* election of consequence, as it is increasingly becoming in South Carolina, independent voters such as the Intervenor-Defendants' members will be disenfranchised entirely by a closed primary system. *Id*. Thus, at stake for the Intervenor-Defendants is not just decreased voter participation, it is the loss of their "'fundamental political right'" to vote. *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (quoting *Reynolds*, 377 U.S. at 562).

This fundamental right is entrenched in the South Carolina Constitution, which requires that elections be "free and open," art. I, § 5, and broadly guarantees that "every citizen . . . who is properly registered is entitled to vote as provided by law," art. II, § 4. Indeed, in a recent South Carolina Supreme Court case related to partisan gerrymandering, *League of Women Voters of S.C. v. Alexander*, 446 S.C. 591 (2025), the Governor defined the "free and open" clause to require that "all citizens qualified to vote be permitted to vote, free from any unconstitutional legal or physical restrictions, in an election for any candidate qualified for an office." Br. of Governor McMaster at 28, *Alexander*, No. 2024-1227 (S.C. Sup. Ct. Jan. 13, 2025). The Senate similarly explained that

23

the clause's "guarantee of an 'equal right to vote' . . . S.C. Const., art I, § 5, is satisfied when every qualified voter has an unhindered *opportunity* to cast a ballot." Br. of Respondent Senate President at 35, *Alexander*, No. 2024-1227 (S.C. Sup. Ct. Jan. 13, 2025) (citations omitted).

A state-run primary is an "election" that must be free and open to all those entitled to vote, within the meaning of the State Constitution. *See, e.g.*, *Smith v. Allwright*, 321 U.S. 649, 661–66 (1944); *Classic v. United States*, 313 U.S. at 318–19. But an election is neither free nor open if voters are excluded based on political ideology, voting history, or some other discriminatory basis. *See State v. Huntley*, 167 S.C. 476 (1932). To exclude qualified voters because they "do not have their names upon the club roll of some political party" is such an unconstitutional, discriminatory distinction. *Id*. at 639–40 (assessing party-primary rules and finding them unconstitutional as applied to an "election").[10] Thus, not only is the current system constitutional, but to *close* primaries threatens to violate these constitutional rights. At a minimum, even a severe burden on the Party's associational rights under the current system would not be enough to outweigh the importance of these broad constitutional guarantees. *See Dunn*, 405 U.S. at 336 (calling the right to vote a fundamental right "preservative of all rights"); *see also Elmore*, 72 F. Supp. at 528 ("[A]ll citizens of this State and Country are entitled to cast a free and untrammeled ballot in our elections, and if the only material and realistic elections are clothed with the name 'primary', they are equally entitled to vote there.").

Therefore, because all of these interests are advanced and protected by the State's semi-open primary system, they justify the nominal restrictions on the Party's rights. Accordingly, the Party's Complaint should be dismissed in its entirety under Rule 12(b)(6).

---

[10] The *Huntley* court addressed whether party primary rules could be applied to elect (not just nominate) school trustees. At the time of the *Huntley* decision, primaries were administered by the parties, not the State, and parties could therefore establish certain rules that might conflict with constitutional safeguards Of course, that situation is distinct from the state-run and state-funded primaries of today, which themselves are "elections" protected under the Constitution.

CONCLUSION

Because the Party's claims fail for each of the foregoing reasons, the Defendant-Intervenors respectfully urge this Court to dismiss the Party's Complaint in full.

Dated: August 3, 2026

/s/ Allen Chaney
Allen Chaney (Fed. Bar. No. 13181)
Sarah Schreiber (Fed. Bar. No. 12564)
ACLU OF SOUTH CAROLINA
P.O. Box 1668
Columbia, SC 29202
(864) 372-6681
achaney@aclusc.org
sschreiber@aclusc.org

Respectfully submitted,

Adriel I. Cepeda Derieux*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street, NW
Washington, DC 20005
(202) 457-0800
acepedaderieux@aclu.org

Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org

Attorneys for Putative Intervenors

* Motion for admission Pro Hac Vice forthcoming

25