**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

SOUTH CAROLINA REPUBLICAN PARTY,

*Plaintiff*,

v.

ROBERT BOLCHOZ, in his official capacity as Chairman of the South Carolina State Election Commission; JOANNE DAY, CLIFFORD J. EDLER, SCOTT MOSELEY, and ANGELA STRINGER, in their official capacities as members of the South Carolina State Election Commission; and CONWAY BELANGIA, in his official capacity as Executive Director of the South Carolina State Election Commission,

*Defendants,*

and

VETERANS FOR ALL VOTERS, and THE CHAMBERLAIN NETWORK,

*Putative Intervenors.*

Case No. 3:26-cv-2699-MGL

**PUTATIVE INTERVENORS' REPLY IN SUPPORT OF INTERVENTION**

## TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Movants' interests and arguments differ from the SEC's. .......... 2

A. Movants assert a direct, significantly protectable interest—not a generalized policy preference. .......... 2

B. Denial of intervention would impair or impede Movants' ability to protect that interest. .......... 4

C. The SEC does not adequately represent Movants' distinct interests. .......... 4

D. Movants' arguments under *Anderson-Burdick* are distinct from those of the SEC. .......... 6

II. *Hunt* addressed a different inadequacy theory and does not control. .......... 8

III. Permissive intervention will not cause *undue* delay or prejudice. .......... 9

CONCLUSION .......... 11

## INTRODUCTION

Notwithstanding the Fourth Circuit's command that "liberal intervention is desirable," *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986), the South Carolina Republican Party (Party) and the State Election Commission Defendants (SEC) both oppose Putative Intervenors' motion to intervene in this lawsuit. They raise the same arguments, which all fail.

Regarding mandatory intervention under Rule 24(a), the Party and SEC argue that the interests asserted by Movants are not sufficiently unique and are, in any event, adequately represented by the SEC. Not so. Movants do not assert a generalized preference about election policy; they represent identified independent veterans whose present ability to participate in Republican primary elections would be eliminated if the Party prevails. That is no mere "policy disagreement with Plaintiff." Pl.'s Mem. Opp'n. to MTI at 9, Dkt. No. 17 (Party). Nor is it the same interest protected by the SEC, whose interest "is defined by the public interest, [not simply] the interests of a particular group of citizens." *JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*, 321 F. App'x 286, 290 (4th Cir. 2009) (citations omitted). The SEC is far from an adequate proxy for the rights of independent voters like Movants.

The Party and SEC's argument against permissive intervention under Rule 24(b) is weaker still. They concede that Movants' motion is timely and raises questions of law or fact that are in common with the main action but complain that allowing intervention would "cause undue delay and time expenditure," Dkt. 17 at 9, and "introduce unnecessary complexity into [the] case," Defs.' Resp. in Opp. to MTI, Dkt. 18 at 19 (SEC). Those concerns are unexplained, unfounded, and internally inconsistent. If Movants' motion to dismiss covers only arguments that "the SEC Defendants are equally capable of raising," *id*., then how could it "introduce unnecessary complexity"? Besides, Rule 24's liberal approach to intervention is not overcome by the ordinary burden of additional briefing. *See, e.g.*, *Middleton v. Andino*, 481 F. Supp. 3d 563, 568 (D.S.C. 2020) ("[B]riefing by the Proposed Intervenors would not amount to prejudicial delay, even if it creates some additional work for Plaintiffs (and the court).").

Courts in this district have repeatedly permitted intervention in litigation involving the State's election laws, including where the Plaintiff here has been granted intervention alongside the SEC. *E.g.*, *Thomas v. Andino*, 335 F.R.D. 364, 371 (D.S.C. 2020). Doing so sharpens the issues for the Court and ensures that the voters directly affected by the requested relief are represented in the litigation. The Court should grant the Motion.

## ARGUMENT

### I. Movants' interests and arguments differ from the SEC's.

The Party and SEC make the same basic mistake: they equate a shared desired outcome with identical interests. *See* Dkt. 18 at 2, 11, 13; Dkt. 17 at 6. But Fourth Circuit precedent rejects that premise. "[E]ven when a governmental agency's interests appear aligned with those of a particular private group . . . 'the government's position is defined by the public interest, [not simply] the interests of a particular group of citizens.'" *JLS, Inc.*, 321 F. App'x at 290 (quoting *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986)); *see also Waffle House, Inc. v. Nat'l Lab. Rels. Bd.*, No. 3:24-cv-6751-MGL, 2025 WL 602744, at *3 (D.S.C. Feb. 10, 2025) (granting intervention). So too here. The SEC seeks to defend the constitutionality of the existing election laws. Movants, by contrast, seek to protect the voting rights of "a particular group of citizens," *Feller*, 802 F.2d at 730—namely, independent veteran voters who the Party seeks to exclude from voting in its state-run primary election. That Movants and the SEC may both seek dismissal does not make those interests identical.

#### A. Movants assert a direct, significantly protectable interest—not a generalized policy preference.

The Party argues that Movants' interest is indistinguishable from that of "[e]very South Carolina voter who might prefer an open primary." Dkt. 17 at 7–8. The SEC argues the same through *Athens Lumber Co. v. FEC*, 690 F.2d 1364 (11th Cir. 1982), arguing that an interest "shared with all unions and all citizens" cannot support intervention. Dkt. 18 at 10 (quoting *Athens*

*Lumber*, 690 F.2d at 1366). Both arguments miss the mark, because they describe an interest Movants have not asserted.

*Athens Lumber* involved a union asserting an interest in campaign-finance limits that it shared generally with other unions and concerned citizens. 690 F.2d at 1366. Movants assert something different: the concrete voting interests of identified South Carolina members whose own eligibility to participate in Republican primaries would change if Plaintiff prevails. Colonel Himsl, for example, currently votes in the primary of his choosing and would be excluded from the Republican primary—the decisive election in his district—if Plaintiff prevails. Himsl Decl. ¶¶ 2, 7, 9–10, Dkt. 15-2. Indeed, Veterans for All Voters (VAV) and The Chamberlain Network (TCN) each represent several similarly situated South Carolina members whose present participation in state-run primaries—not a future or hypothetical policy preference—would be extinguished by Plaintiff's requested relief. Ramos Decl. ¶ 6, Dkt. 15-1; Lucier Decl. ¶ 7, Dkt. 15-3.

That is precisely the kind of "significantly protectable" interest that merits intervention under Rule 24. *See Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991). It "bear[s] a close relationship to the dispute between the existing litigants" because Movants' members are among the very voters whom Plaintiffs' requested relief would exclude from future state-run primaries—not remote, generalized advocates observing from the sidelines. *Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D. 109, 111 (E.D. Va. 1993). Courts have recognized a direct, protectable interest where an organization represents voters whose own ability to vote is threatened by the requested relief. *See Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 687 (7th Cir. 2023) (holding political party's "associational interest on behalf of its members, Illinois voters whose mail-in ballots might not be counted" was a "direct, significant and legally protectable interest"), *rev'd and remanded on other grounds*, 607 U.S. 71 (2026); *1789 Found., Inc. v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *3 (D. Ariz. Mar. 17, 2025) (rejecting argument that organizations' interests were "generalized" and finding "significant protectable . . . associational interests in protecting their own constituents' voting rights"); *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-cv-

1867, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024) (union had "direct, significant, and legally protectable interest" in protecting members from removal from voter rolls).

**B. Denial of intervention would impair or impede Movants' ability to protect that interest.**

Because Movants' interest is direct rather than generalized, impairment is straightforward. *See JLS, Inc.*, 321 F. App'x at 290. Plaintiff seeks a judgment that would eliminate Movants' members' present ability to participate in Republican state-run primaries. A judgment for the Party would therefore operate directly on the very interest Movants seek to protect, without any later proceeding in which they could be heard. That is more than enough for Rule 24(a). *See Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001) ("[A] would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal.").

Indeed, both Oppositions' impairment arguments depend on their antecedent contention that Movants lack a cognizable interest to impair. *See* Dkt. 18 at 10–11 ("Because Movants have no direct, significantly protectable interest . . . denial of the Motion cannot impair or impede the ability to protect one."); *see also* Dkt. 17 at 17. Because that premise is incorrect, impairment follows.

**C. The SEC does not adequately represent Movants' distinct interests.**

The Oppositions' adequacy argument again rests on the premise that because the SEC and Movants presently may seek the same disposition, the SEC necessarily represents Movants' interests. But *JLS* and *In re Sierra Club* reject that premise. In *JLS*, the Public Service Commission and proposed intervenors were aligned in seeking to preserve the Commission's regulatory authority over the plaintiff. Yet the Fourth Circuit held that the intervenors satisfied their burden because the Commission's obligation to represent the broader public interest did not necessarily encompass the intervenors' distinct private interests. *JLS, Inc.*, 321 F. App'x at 290–91. *Sierra Club* likewise held that South Carolina Department of Health and Environmental Control (DHEC) could not adequately represent a private group merely because both sought to defend the same regulation:

their interests could "converge" on constitutionality while "diverg[ing]" elsewhere because DHEC represented all South Carolinians and Sierra Club represented a discrete constituency. 945 F.2d at 780.

The same distinction exists here. The SEC's institutional obligation is to administer and defend South Carolina's election laws on behalf of the State and entire electorate. Movants' interest is in preserving their members' own participation in the elections Plaintiff seeks to close to them. Those interests presently point toward the same judgment, but *JLS* and *Sierra Club* establish that present alignment does not make them identical.

*Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013), is not to the contrary. The SEC invokes *Stuart* to suggest Movants must make a "strong showing of inadequacy" because they seek to intervene alongside a government agency defending duly enacted law. Dkt. 18 at 8. But there, the proposed intervenors' supposedly distinct interests were already being advanced by the Attorney General. The Fourth Circuit emphasized that the Attorney General had pressed the "exact argument" the intervenors invoked to establish adversity and concluded that the asserted difference amounted only to disagreement over litigation tactics. 706 F.3d at 352–53. Here, the distinction is substantive. The SEC does not possess Movants' members' personal interests in continuing to participate in Republican primaries, and its obligation to represent the public is not equivalent to Movants' obligation to protect those voters.

Nor does *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022), alter the inquiry. The SEC tries to cabin *Berger* to its facts, arguing that Movants receive none of its benefit because they are not "state agents" the way the North Carolina legislative leaders were. Dkt. 18 at 12–13. To be sure, *Berger* involved state officials who state law separately authorized to represent the State—an institutional consideration not present here. 597 U.S. at 196–97. But *Berger* also rests on a narrower, transferable premise: adequacy turns on the parties' actual interests, not simply their shared litigation position. That principle is familiar to courts in the Fourth Circuit. "[E]ven when a governmental agency's interests appear aligned with those of a particular private group at a particular moment in time," the Fourth Circuit has explained, "the

government's position is defined by the public interests, [not simply] the interests of a particular group of citizens." *JLS, Inc.*, 321 F. App'x at 290. Thus, the relevant question is not simply whether Movants and the SEC both seek dismissal, but whether the SEC's broader public mandate adequately encompasses Movants' distinct interest in preserving their members' participation in the elections Plaintiffs would close. It does not.

Indeed, the SEC's argument is impossible to reconcile with *JLS*. There, the Public Service Commission (PSC) and proposed intervenors were aligned in seeking to preserve the PSC's regulatory authority over JLS. Yet, the Fourth Circuit held that the intervenors satisfied their burden because their direct economic interests, incentives, and factual knowledge differed from the PSC's broader public mandate. 321 F. App'x at 289–91. The court expressly emphasized that governmental and private interests may appear aligned "at a particular moment in time" without the latter being adequately represented. *Id.*

The same gap exists here. Like the PSC in *JLS*, the SEC litigates from an institutional posture answering to "the public interest generally." *In re Sierra Club*, 945 F.2d at 780. The SEC confirms this distinction: it describes its institutional role as administering and defending South Carolina's statutory election regime: "Whoever holds these offices—now or later—must administer, adhere to, and defend Title 7." Dkt. 18 at 3. And it characterizes its objective in this litigation as defending "South Carolina's existing statutory scheme and semi-open primary system." *Id.* at 11. Movants bring something different: the interests and experience of the voters who would bear the direct cost of Plaintiff's requested relief. *See, e.g.*, Ramos Decl. ¶¶ 6–9, Dkt. 15-1; Lucier Decl. ¶¶ 7–13, Dkt. 15-3; Himsl Decl. ¶¶ 7–11, Dkt.15-2. That distinction is not merely evidentiary. It will substantively affect the *Anderson-Burdick* arguments that the SEC and Movants can present to the Court.

### D. Movants' arguments under *Anderson-Burdick* are distinct from those of the SEC.

*Anderson-Burdick* requires the Court to assess the "character and magnitude" of the Party's asserted burden and weigh it against the interests supporting South Carolina's election

rules. *Fusaro v. Cogan*, 930 F.3d 241, 257–58 (4th Cir. 2019). Movants' distinct interests bear directly on both sides of that balance. On the burden side, Movants emphasize that South Carolina does not force the Party to associate indiscriminately with nonmembers: voters may participate in only one party primary in an election cycle; the Party's own rules recognize participation in its primary as a means of affiliation; and South Carolina permits the Party to choose alternative nomination methods through which it can restrict participation. *See* Dkt. 15-4 at 8, 19–24 (Proposed Mot. To Dismiss). Those features support Movants' argument that the Party has alleged, at most, a slight associational burden.

On the other side of the balance, Movants give concrete content to the interests served by the existing system. Many of their members rely on semi-open primaries to participate in state-run elections while remaining politically independent, and in districts where the Republican primary is the only competitive election. Closing those primaries would eliminate their only meaningful opportunity to participate in choosing their representative. *See* Himsl Decl. ¶¶ 7–11, Dkt. 15-2; Ramos Decl. ¶¶ 6–9, Dkt. 15-1; Lucier Decl. ¶¶ 7–13, Dkt. 15-3. Those concrete burdens on Movants' members bear directly on the *Anderson-Burdick* analysis.

That distinction is substantive, not a mere "disagreement over how to approach the conduct of the litigation." Dkt. 18 at 12, 14 (quoting *Stuart*, 706 F.3d at 353). The SEC must defend the statutory regime from the perspective of the State as regulator and represent the electorate. Movants defend the same regime from the perspective of the voters who would bear the direct cost of Plaintiff's requested relief. *Sierra Club* recognizes why that distinction matters: although DHEC and Sierra Club converged on constitutionality, their different interests could produce different positions concerning the "balance of hardships" and "public interest." 945 F.2d at 780. That reasoning has particular force here, where *Anderson-Burdick* itself requires the Court to weigh competing interests. While the SEC will likely lean into the "judicial deference" owed to the state's balancing of competing governmental interests, *see Fusaro*, 930 F.3d at 263 (applying *Anderson-Burdick*), Movants instead press a targeted defense of their fundamental constitutional

rights to vote in "free and open elections." *See* S.C. Const. art. I, § 5. That the arguments seek the same result does not render them indistinct.

The SEC therefore puts too much weight on its ability to make overlapping legal arguments. *See* Dkt. 18 at 11, 13. Rule 24 does not turn on whether SEC counsel can cite the same cases. The question is whether the SEC adequately represents Movants' distinct interests. Because those interests bear directly on the balance *Anderson-Burdick* requires, it does not.

## II. *Hunt* addressed a different inadequacy theory and does not control.

The Oppositions' reliance on *Hunt v. Texas* fares no better. *See* Dkt. 18 at 14–15; Dkt. 17 at 9–11. *Hunt* did not consider the present divergence of interests Movants assert. The inadequacy argument addressed there rested on a predicted future change in representation: movants there argued that Secretary Nelson might leave office and that her successor might cease defending Texas's primary system. *Hunt v. Texas*, No. 2:25-cv-00200, ECF No. 65, at 3 (N.D. Tex. July 17, 2026). The court rejected that theory because Nelson was presently taking positions "in line with the Proposed Intervenors" and the movants could offer only "speculation about a future shift in litigation strategy." *Id.* at 3–4.

By contrast, Movants' argument here does not depend on any such contingency. Whether the SEC changes personnel or litigation positions, its institutional obligation remains to represent the State and the public as a whole. But Movants represent the interests of voters whose participation Plaintiff seeks to eliminate. That divergence exists *now*. And unlike *Hunt*, this Court is bound by Fourth Circuit precedent recognizing that governmental and private interests may remain distinct even when they presently point toward the same litigation result. *See In re Sierra Club*, 945 F.2d at 780 (government and intervenor could "converge" on constitutionality while their interests "diverge"); *JLS*, 321 F. App'x at 290 (government may inadequately represent a private group even when their interests "appear aligned . . . at a particular moment in time"); *accord Waffle House, Inc.*, 2025 WL 602744 at *3 (granting intervention even when "NLRB's interest may appear to align with those of the Union at this specific juncture").

Nor does it matter that *Hunt* may have presented an even more concrete possibility of a future change in the government's position. The point is not that such a change is more likely here: the point is that Movants need not show one. *Hunt* rejected a claim that representation *might* become inadequate in the future; *Sierra Club* and *JLS* support Movants' different claim that the SEC does not adequately represent their distinct interests *today*. *Hunt* therefore does not resolve the adequacy question presented here.

## III. Permissive intervention will not cause *undue* delay or prejudice.

Rule 24(b) must be construed "liberally in favor of intervention." *Backus v. South Carolina*, No. 3:11-cv-03120, 2012 WL 406860, at *2 (D.S.C. Feb. 8, 2012); *see also Middleton v. Andino*, 481 F. Supp. 3d 563, 571 (D.S.C. 2020) (referencing the "liberal policy" allowing permissive intervention). The considerations governing that discretion favor intervention here.

Of the three factors that this Court typically considers when determining whether to grant permissive intervention, the original parties concede two: that the motion is timely (Dkt. 17 at 3; Dkt. 18 at 9), and that the Movants' interests raise questions of law or fact in common with the main action (Dkt. 17 at 8, 18–19; Dkt. 18 at 2). Their remaining objection is that the intervention will unnecessarily complicate and delay the proceedings and that Movants' participation is unnecessary because the SEC may represent the Intervenors' interests. *See* Dkt. 17 at 8–9; Dkt. 18 at 19. Neither objection warrants denial.

Rule 24 does not protect the original parties from the ordinary burdens of litigation; it asks whether intervention would cause "undu[e] delay or prejudice." Fed. R. Civ. P. 24(b)(3). Neither Opposition identifies concrete prejudice beyond the ordinary burdens associated with adding a party. *See Appleton v. C.I.R.*, 430 Fed. App'x 135, 138 (3d Cir. 2011) ("[A]ny introduction of an intervener in a case will necessitate its being permitted to actively participate, which will inevitably cause some 'delay.' 'Undue' means not normal or appropriate."). Courts in this district routinely grant intervention over such objections. *See Park v. McCabe Trotter & Beverly, P.C.*, No. 2:17-CV-657-RMG, 2018 WL 3543526, at *3 (D.S.C. July 23, 2018); *Thomas v. Andino*, No. 3:20-CV-

01552-JMC, 2020 WL 4934305, at *3 (D.S.C. Aug. 24, 2020); *see also Middleton v. Andino*, 481 F. Supp. 3d 563, 568 (D.S.C. 2020) ("[B]riefing by the Proposed Intervenors would not amount to prejudicial delay, even if it creates some additional work for Plaintiffs (and the court)."). As in those cases, the ordinary time and effort associated with Movants' participation does not amount to undue delay or prejudice.[1] *See Thomas*, 2020 WL 4934305, at *3 (citing *Park*, 2018 WL 3543526, at *3 as "explaining the prospect of having 'to spend time and effort responding' to a potential intervenor did not outweigh the movant's right to be heard").

The parties primarily argue that intervention is "unnecessary" because the SEC Defendants are "capable of raising" the same defenses as the Movants. *See* Dkt. 18 at 18–19; Dkt. 17 at 8. But capability is not the question. As explained *supra*, the SEC and Movants possess distinct interests even where their legal arguments overlap. And because the SEC has not yet filed its responsive pleading, its assertion that it is "equally capable" of raising Movants' arguments, Dkt. 18 at 19, does not establish that Movants' distinct interests will actually be represented.[2] The SEC's ultimate objective may be the same—to defend the current primary system—but the arguments and interests that Movants will bring to that defense are not. *See Planned Parenthood S. Atl. v. Wilson*, No. 3:21-cv-508-MGL, 2021 WL 878791, at *3 (D.S.C. Mar. 9, 2021) (permitted the Governor and Speaker of the House to intervene as defendants in support of the State's "Fetal Heartbeat and Protection from Abortion Act," notwithstanding the Attorney General's "zealous defense of the Act").

[1] The SEC complains that the case could become additionally complex if the South Carolina Attorney General or the presiding officers of the General Assembly choose to intervene as well. Dkt. 18 at 19. If anything, their intervention would be further reason to allow the Movants into the case, in light of the Attorney General's public support of the Plaintiff's position. In any event, neither office has expressed an intention to intervene.

[2] Nor is the Oppositions' proposed alternative—amicus participation—an adequate substitute for intervention. *See* Dkt. 17 at 11; Dkt. 18 at 3–4. "[T]he right to file a brief as amicus curiae is no substitute for the right to intervene as a party in the action . . . ." *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996).

Courts in this district have repeatedly permitted intervention alongside the SEC in election-related litigation. In *League of Women Voters of S.C. v. Andino*, for example, the Speaker of the House and President of the Senate were both allowed to intervene. No. 2:20-cv-3537-RMG, 2020 WL 6573386 (D.S.C. Oct. 14, 2020) (granting permissive intervention "conditioned on compliance with the schedule previously set by the Court"). The same was true in *Middleton v. Andino*, 481 F. Supp. 3d 563 (D.S.C. 2020), and *Thomas v. Andino*, No. 3:20-cv-1552-JMC, 2020 WL 4934305 (D.S.C. Aug. 24, 2020). Indeed, the Party itself has previously intervened as a defendant alongside the SEC to defend South Carolina election law. *See Thomas v. Andino*, 335 F.R.D. 364, 371 (D.S.C. 2020).

The SEC also invokes the Fourth Circuit's description of *SCGOP I* as having "a somewhat complicated procedural history," in support of its concern that intervention would complicate this case. Dkt. 18 at 19. But the Fourth Circuit did not attribute that procedural complexity to intervention or otherwise question the intervenors' participation. Indeed, the court subsequently discussed a *successful* dispositive motion filed by the intervenor-defendants without suggesting that their participation was improper or unduly burdensome. *See Greenville Cnty. Republican Party Exec. Comm. v. Greenville Cnty. Election Comm'n*, 604 F. App'x 244, 250 (4th Cir. 2015). *SCGOP I* therefore provides no support for the SEC's asserted complexity concern.

Therefore, if this Court refuses to grant intervention as of right, it should exercise its discretion to grant permissive intervention to the Movants.

## CONCLUSION

Movants satisfy each element of intervention under Rule 24(a) and 24(b), and their participation will not prejudice any party. Thus, the Motion should be granted.

Dated: August 24, 2026

[*signature blocks on following page*]

Respectfully submitted,

*s/ Allen Chaney*
Allen Chaney (Fed. Bar. No. 13181)
Sarah Schreiber (Fed. Bar. No. 12564)
ACLU OF SOUTH CAROLINA
P.O. Box 1668
Columbia, SC 29202
(864) 372-6681
achaney@aclusc.org
sschreiber@aclusc.org

Adriel I. Cepeda Derieux*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street, NW
Washington, DC 20005
(202) 457-0800
acepedaderieux@aclu.org

Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org

*Attorneys for Putative Intervenors*

* Motion for admission *pro hac vice* forthcoming.