**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| SOUTH CAROLINA REPUBLICAN PARTY,<br><br>*Plaintiff,*<br><br>v.<br><br>ROBERT BOLCHOZ, in his official capacity as Chairman of the South Carolina State Election Commission; JOANNE DAY, CLIFFORD J. EDLER, SCOTT MOSELEY, and ANGELA STRINGER, in their official capacities as members of the South Carolina State Election Commission; and CONWAY BELANGIA, in his official capacity as Executive Director of the South Carolina State Election Commission,<br><br>*Defendants*. | Civil Action No.: 3:26-cv-02699-MGL<br><br>**SEC DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF No. 1)** |

Defendants Robert Bolchoz, in his official capacity as Chairman of the South Carolina State Election Commission ("SEC"); Joanne Day, Clifford J. Edler, Scott Moseley, and Angela Stringer, in their official capacities as members of the SEC; and Conway Belangia, in his official capacity as Executive Director of the SEC (collectively, "SEC Defendants"), by and through the undersigned counsel, hereby move to dismiss the South Carolina Republican Party's ("Party") Verified Complaint (ECF No. 1) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Court should grant the present Motion and dismiss the Party's Complaint.

1. Pursuant to Local Civil Rule 7.04 (D.S.C.), a full explanation of this Motion is contained herein, such that a separate memorandum would serve no useful purpose. In accordance with Local Civil Rule 7.02(A) (D.S.C.), prior consultation with opposing counsel is not required in connection with this Motion to Dismiss.

## INTRODUCTION

The Party asks this Court to declare that South Carolina must conduct closed primary elections and to order the SEC Defendants to build the party-registration apparatus that a closed primary would require. The Party has asked this Court for materially the same relief before, and this Court denied it. In *Greenville County Republican Party Executive Committee v. South Carolina*, 824 F. Supp. 2d 655 (D.S.C. 2011) ("*SCGOP I*"), the Party and its Greenville County affiliate mounted substantially the same First and Fourteenth Amendment attack on effectively the same statutory scheme. This Court rightly rejected it, holding that "South Carolina's open primary laws are not facially unconstitutional and do not violate political parties' freedom of association given the availability of other nomination methods." *Id.* at 667. The Party then "abandoned the litigation" rather than appeal. *Greenville Cnty. Republican Party Exec. Comm. v. Greenville Cnty. Election Comm'n*, 604 F. App'x 244, 251 (4th Cir. 2015) ("*SCGOP II*"). Fifteen years after *SCGOP I*, the Party returns to this Court with the same theories but without pleading facts to distinguish this case from the earlier litigation or to otherwise warrant a different conclusion. The Court should reach the same result.

Fourth Circuit precedent provides the reason the Party's theory fails. In *Miller v. Brown*, 503 F.3d 360 (4th Cir. 2007) ("*Miller II*"), the court sustained Virginia's open primary statute against a facial challenge because the Virginia law "allows political parties to nominate candidates not only by state-run primary but also by other methods controlled and funded by the party," and because "by merely choosing any of these other options, a party is free to limit its candidate selection process to voters who share its political views." *Id.* at 367. The Fourth Circuit thus concluded "the 'forced association' that the Supreme Court has condemned . . . simply [was] not present." *Id.* (citation omitted).

As this Court has recognized, South Carolina law affords the Party precisely the same option. *Greenville Cnty. Republican Party Exec. Comm. v. South Carolina*, No. CA 6:10-CV-01407-JMC, 2011 WL 2910360, at *2 (D.S.C. July 18, 2011) ("The fact remains that the primary system is not the only way in which Plaintiffs may nominate a candidate."). A certified political party may nominate its candidates "by political party primary, by political party convention, or by petition." S.C. Code Ann. § 7-11-10(A). Because the State does not force the Party to nominate by primary, the Party's compelled-association theory collapses at its premise.

On that dispositive question the Complaint is conspicuously quiet. It does not allege that the Party sought a three-fourths vote at its state convention to nominate by convention rather than by primary. *See* S.C. Code Ann. § 7-11-30(A)(1). It does not allege that the Party placed the question before its primary electorate. *See id.* § 7-11-30(A)(2). It does not allege that the Party attempted to nominate by petition, and it never alleges that any such effort failed. What the Complaint does allege is that the Party would prefer a different statutory regime—one in which the State maintains party registration and administers, at public expense, partisan primaries from which the Party may exclude those it does not wish to admit. Here too, the Fourth Circuit provides the answer: "a party has no constitutional right even to select its nominees by primary." *Miller II*, 503 F.3d at 368.

The Party's remaining claims fail for these same reasons (and others). The Party's equal protection count restates the associational claim and is measured by the same standard, which the State's statutory scheme satisfies because it treats every certified party and every qualified elector alike. The Complaint's unconstitutional-conditions count presupposes a protected entitlement to a state-run closed primary that no authority recognizes. The count premised on S.C. Code Ann. § 7-9-20 asks this Court to construe a South Carolina statute and to order state officials to conform

their conduct to it—relief the Eleventh Amendment forbids, and which this Court has, in any event, already held the statute does not support. Finally, the declaratory judgment claim merely identifies a requested remedy rather than state a separate cause of action.

On the subject of remedies, one category of relief requested by the Party fails for want of jurisdiction rather than on the merits. The Party's Prayer for Relief asks the Court to order the SEC Defendants to "implement, for Plaintiff Party's future primaries, a constitutionally adequate mechanism by which voters may affiliate with Plaintiff Party, another party, or no party." ECF No. 1, at 17, ¶ F. South Carolina maintains no such party-registration system, and the SEC Defendants do not have the authority to create one. The SEC "must follow the law as written" and leave the lawmaking to the General Assembly. *Beaufort Cnty. Bd. of Educ. v. Lighthouse Charter Sch. Comm.*, 335 S.C. 230, 241, 516 S.E.2d 655, 660–61 (1999). Rather than issue the Party's requested mandatory injunction compelling the SEC Defendants to do that which state law forbids, the Court should decline the invitation under Rule 12(b)(1).

For the foregoing reasons, the Court should dismiss the Party's Complaint.

## **BACKGROUND**

### I. South Carolina's Methods of Nomination.

South Carolina offers a certified political party three routes to reach the general election ballot. "Nominations for candidates for the offices to be voted on in a general or special election may be by political party primary, by political party convention, or by petition." S.C. Code Ann. § 7-11-10(A). The choice among these options belongs to the certified party. *See id.* § 7-9-10; *SCGOP II*, 604 F. App'x at 247 ("The selection of which procedure to utilize is made by a certified political party.").

"No single provision of the South Carolina Code directly mandates the open primary

system. Rather, that system arises from the interworking of several Code provisions." *SCGOP II*, 604 F. App'x at 247 n.5. A qualified elector who satisfies the age, citizenship, and registration requirements of § 7-9-20 may vote in a party primary; the county board of voter registration and elections furnishes the precinct lists of "all electors entitled to vote," *id.* § 7-5-420; and no elector "shall be entitled to vote in more than one party primary election held the same day," *id.* § 7-13-1040. *See SCGOP II*, 604 F. App'x at 247 n.5. Nothing in the Code conditions the right to vote in a given primary on an elector's party affiliation, and South Carolina does not record party affiliation on its voter-registration rolls. South Carolina courts have construed these provisions the same way. *See Drawdy v. S.C. Democratic Exec. Comm.*, 271 S.C. 415, 418–19, 247 S.E.2d 806, 808–09 (1978).

Section 7-9-20 establishes the baseline qualifications for party membership and voting in primary elections, and the provision permits a party to supplement them. "The state convention of any political party, organization, or association in this State may add by party rules to the qualifications for membership in the party . . . and for voting at the primary elections if the qualifications do not conflict with the provisions of this section or with the Constitution and laws of this State or of the United States." *Id.* § 7-9-20. Section 7-11-20 provides the same limitation, albeit from the other direction: party conventions and primaries "must be conducted in accordance with the provisions of this title and with party rules not in conflict with the provisions of this title." *Id.* § 7-11-20(A).

A party that prefers not to use a primary may nominate by convention. To change from primary to convention nomination, a party must obtain "a three-fourths vote of the total membership of the convention" and the approval of "a majority of voters in that party's next primary election." *Id.* § 7-11-30(A)(1)–(2). A party that has nominated by convention in the

previous cycle need not hold a primary to continue doing so. *Id.* § 7-11-30(D). Certified parties in South Carolina use the convention method, and the South Carolina Supreme Court has construed § 7-11-30 in a party's favor to hold that the primary-approval condition does not apply to a party that has always nominated by convention. *See S.C. Libertarian Party v. S.C. State Election Comm'n*, 407 S.C. 612, 616–17, 757 S.E.2d 707, 708–09 (2014) ("Based on well-established rules of statutory construction, we conclude that the General Assembly intended the new requirement of a primary referendum in section 7-11-30 to apply only to parties seeking to abandon the open primary method of nominating candidates in favor of the closed convention method. Because petitioner has always utilized the convention method of nominating candidates, the Act does not require petitioner to adopt a primary nomination process in order to retain its convention method of nomination." (citing *SCGOP I*, 824 F. Supp. 2d 655)).[2] A party may also place its candidate on the general election ballot by petition, which § 7-11-10(A) authorizes and which carries neither a supermajority nor a primary-approval condition.

## II. The Party's Prior Challenge to This Statutory Scheme.

In June 2010, the Party, the Greenville County Republican Party's Executive Committee, that committee's chairman, and an individual elector sued the State of South Carolina and the Chairman of the SEC, challenging South Carolina's open primary system and the supermajority condition of § 7-11-30 under the First and Fourteenth Amendments, both facially and as applied. *SCGOP I*, 824 F. Supp. 2d at 660; *SCGOP II*, 604 F. App'x at 248–49. The parties cross-moved for summary judgment on the facial challenge, and on March 30, 2011, this Court ruled for the defendants on every question presented.

2. The primary-approval component of S.C. Code Ann. § 7-11-30(A)(2) postdates *SCGOP I*: the General Assembly added it by 2013 S.C. Act No. 61, as amended by 2014 S.C. Act No. 196. *See SCGOP II*, 604 F. App'x at 248 n.6.

*First*, this Court held that "South Carolina's open primary laws do not facially burden political parties' right to freedom of association," because South Carolina, like Virginia in *Miller II*, supplies alternative methods of nomination through which "political parties [may] associate with only those people approved for membership in the party." *SCGOP I*, 824 F. Supp. 2d at 666. *Second*, the Court rejected the contention that § 7-11-20 already authorizes closed primaries, holding that "[t]he plain language of section 7-11-20 simply does not allow parties that choose to use the primary method of nomination to operate closed primaries" and that the rules the plaintiffs wished to adopt "would directly conflict with multiple provisions of Title 7." *Id.* at 666. *Third*, the Court held that § 7-9-20's designation of the state convention as the rule-adding body imposes "no more than an insubstantial burden, if a burden at all." *Id.* at 667. *Fourth*, the Court held that § 7-11-30 "does not have any direct affect on political parties' internal processes," that the supermajority condition is "substantially similar to statutes requiring a candidate to obtain a certain percentage of signatures from qualified electors to gain access to the general election ballot," and that any burden imposed "is only slight, at best." *Id.* at 670. *Fifth*, the Court rejected the equal protection challenge, holding that political parties are not a suspect class and that the scheme "place[s] all political parties on equal ground." *Id.* at 669–70.

*Finally*, the Court noted that because it found "any burden imposed upon political parties by the challenged statutes to be slight, at the most, the State must provide only important regulatory interests to justify reasonable, non-discriminatory restrictions." *Id.* at 671. On this point, the Court noted that the defendants had offered "several state interests in justification of the challenged statutes including protecting and preserving the integrity of the nominating process, promoting fairness, increasing voter participation, and ensuring administrative efficiency," among others. *Id.* at 671 & n.11. After reciting and analyzing various state interests identified, the Court concluded

with its finding that "the challenged statutes are adequately justified by legitimate state interests." *Id.* at 672.

The case then proceeded on the as-applied claims. On June 7, 2013, the Party filed a stipulation of dismissal under Rule 41 and withdrew from the litigation. *SCGOP II*, 604 F. App'x at 250. With the Party no longer present, the remaining plaintiffs could no longer press associational rights that belonged to the Party, and on August 30, 2013, this Court dismissed the action for lack of standing. *Greenville Cnty. Republican Party Exec. Comm. v. Way*, No. 6:10-cv-01407-MGL, ECF No. 181, at 16–18, 22 (D.S.C. Aug. 30, 2013). The Fourth Circuit affirmed in part and dismissed in part. As to the 2011 merits ruling, the court was explicit: "the State Party had standing to pursue the facial challenges that were rejected by the First Opinion. The State Party, however, then abandoned the case and has not appealed." *SCGOP II*, 604 F. App'x at 253. Because the remaining appellants lacked standing of their own, the court held that it "cannot disturb the First Opinion." *Id.*

## III. The Present Action.

The Party filed its Verified Complaint on July 6, 2026. According to the Party's Complaint, the prior month, on June 6, 2026, the Party's State Executive Committee adopted Rules 11-A-6 and 11-A-7, which purport to limit participation in Republican primaries to registered Republicans. Compl. ¶ 40 & Ex. A. The Party alleges that it ratified those rules in reconvened convention proceedings on June 27, 2026. *Id.*

The Party's Complaint pleads six causes of action, five under 42 U.S.C. § 1983 and one under the Declaratory Judgment Act: freedom of political association (Count I); compelled association and forced political speech (Count II); equal protection (Count III); unconstitutional limitations on ballot access and nomination procedures (Count IV); violation of "party rule rights"

under S.C. Code Ann. § 7-9-20 (Count V); and declaratory judgment (Count VI). The Party seeks declarations that the statutory scheme is unconstitutional as applied and that it may limit its primaries to members, Prayer ¶¶ A–C; a declaration that § 7-9-20 authorizes its rules and that the SEC Defendants must recognize them, *id.* ¶ D; an injunction against enforcement of S.C. Code Ann. §§ 7-9-20, 7-5-420, 7-13-1010, 7-13-1040, and 7-11-30, *id.* ¶ E; an order compelling the SEC Defendants to implement a voter-affiliation mechanism, *id.* ¶ F; and fees under 42 U.S.C. § 1988, *id.* ¶ G.

Two features of the Party's pleading warrant note at the outset. *First*, the Complaint alleges nothing about the Party's use of, or attempt to use, either alternative method of nomination that South Carolina law provides. *Second*, the Complaint's introduction asserts that former S.C. Code Ann. § 7-9-40 "once protected the right of political parties to define party membership based on prior participation in the party's primaries." Compl. at 2. The repealed provision did no such thing. It directed that "[m]embers of a political party must belong to the club in the voting precinct set forth in their respective registration records" and made the preceding primary's poll list the "prima facie list of the members of each club for the purpose of club organization and the election of delegates to the county convention." S.C. Code Ann. § 7-9-40 (repealed 2010). It governed the internal organization of party clubs and the selection of convention delegates. *See* 1983 WL 181740, at *1 (S.C.A.G. Feb. 9, 1983) (addressing questions posed by the Party's then-Executive Director). It said nothing about who may vote in a primary.

On August 3, 2026, before the SEC Defendants had answered or otherwise responded to the Party's Complaint,[3] two nonpartisan, out-of-state veterans' organizations—Veterans for All

3. After filing this action on July 6, 2026, ECF No. 1, the Party served its Complaint on the SEC Defendants on July 23, 2026, ECF No. 11, and it granted them a 21-day extension to answer or otherwise respond to the Complaint under Local Civil Rule 12.01 (D.S.C.), ECF No. 16.

Voters ("VAV") and The Chamberlain Network ("TCN")—moved to intervene as defendants as of right under Rule 24(a), or alternatively, with the Court's permission pursuant to Rule 24(b). ECF No. 15. Both the Party and the SEC Defendants, in separate August 17, 2026 submissions, opposed VAV and TCN's Motion to Intervene. ECF No. 17 (Party); ECF No. 18 (SEC Defendants). On August 24, 2026, VAV and TCN filed their Reply in Support of Intervention. ECF No. 19.

The SEC Defendants now move to dismiss the Party's Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court should grant the SEC Defendants' Motion.

## LEGAL STANDARDS

### I. Rule 12(b)(1)

A motion under Rule 12(b)(1) tests the Court's subject-matter jurisdiction, and the party invoking federal jurisdiction bears the burden of establishing it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Under Rule 12(b)(1), a court must dismiss a claim if the court lacks subject-matter jurisdiction over that claim. A motion to dismiss for lack of subject-matter jurisdiction challenges a court's "power to adjudicate" a case. *United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012). After all, a court that lacks jurisdiction "has no power to . . . dispose of a claim on the merits." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).

Standing goes to subject-matter jurisdiction. *Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 481 (4th Cir. 2003). Standing requires an injury in fact, a causal connection between the injury and the conduct complained of, and a likelihood "that the injury will be redressed by a

favorable decision." *Lujan*, 504 U.S. at 560–61. The plaintiff must establish each of these elements "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. Redressability fails where relief against the named defendants cannot remedy the asserted injury, including where "the actions of an independent third party . . . st[and] between the plaintiff and the challenged actions." *Frank Krasner Enters., Ltd. v. Montgomery Cnty.*, 401 F.3d 230, 235 (4th Cir. 2005). Ripeness, as with standing, "originates in the 'case or controversy' constraint of Article III." *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013). It is therefore "a question of subject matter jurisdiction." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013).

## II. Rule 12(b)(6)

To survive a motion under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must accept as true well-pleaded factual allegations for purposes of ruling on a Rule 12(b)(6) motion, the Court need not (and shall not) credit legal conclusions, unwarranted inferences, or arguments cast as factual allegations. *See id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

# ARGUMENT

## I. The Court Lacks Jurisdiction to Compel the SEC Defendants to Create the Party's Requested Partisan-Registration System.

As a threshold matter, it is important to review the Party's claims through the lens of the specific relief requested. After all, courts must "closely examine the connection between the alleged injury and the judicial relief requested' to guard against cases 'in which the relief requested goes well beyond the violation of law alleged.'" *Maryland v. U.S. Dep't of Agric.*, 151 F.4th 197,

212 (4th Cir. 2025) (citation omitted). Moreover, "probing the requested relief in the standing analysis helps . . . determine whether a federal court is even capable of providing the remedy the plaintiff seeks." *Id.* Here, the Party asks this Court to "[o]rder Defendants to implement, for [its] future primaries, a constitutionally adequate mechanism by which voters may affiliate with [the] Party, another party, or no party, and by which only eligible party-affiliated voters may receive [its] primary ballot." Compl., Prayer for Relief, ¶ F. That request asks the Court to direct the SEC Defendants to construct a statewide party-registration regime. The Court lacks jurisdiction to grant it, for two related reasons.

*First*, the SEC Defendants cannot supply the relief. The Party itself alleges that "South Carolina does not presently maintain a party-registration system." Compl. ¶ 21. The registration rolls the SEC maintains are the rolls the General Assembly has prescribed, *see* S.C. Code Ann. §§ 7-5-110, 7-5-186, and the qualifications for primary voting are the qualifications § 7-9-20 sets. The SEC possesses "the powers and duties as enumerated in this title," *id.* § 7-3-10(D), and it must "ensure that the [SEC] and the county boards of voter registration and elections comply with applicable state and federal election law," *id.* § 7-3-10(G). Those are duties to administer the law, not authority to rewrite it. South Carolina law is emphatic: "[a]n administrative agency must follow the law as written until its constitutionality is judicially determined; an agency has no authority to pass on the constitutionality of a statute." *Lighthouse Charter Sch. Comm.*, 335 S.C. at 241, 516 S.E.2d at 660–61; *accord Al-Shabazz v. State*, 338 S.C. 354, 381 n.12, 527 S.E.2d 742, 757 n.12 (2000); *O'Shields v. Caldwell*, 207 S.C. 194, 217, 35 S.E.2d 184, 193 (1945). Creating a party-registration and party-affiliation system is a legislative undertaking: it requires decisions about affiliation deadlines, modifications to affiliation, the treatment of unaffiliated electors, data retention, and the allocation of costs between the State and the counties. The General Assembly

has not made these policy choices, and the SEC Defendants cannot do so by administrative fiat.

*Second*, and consequently, the requested relief would not redress the alleged injury. Redressability requires more than a favorable judgment; it requires that the judgment operate on a defendant with the power to end the injury. Where an actor not before the court "stands directly between the plaintiff[] and the challenged conduct in a way that breaks the causal chain," standing fails. *Frank Krasner Enters.*, 401 F.3d at 236. Here the intervening actor is the General Assembly, whose enactments define the rolls, the qualifications, and the ballots. A federal court cannot order an executive or administrative agency to enact the legislation the plaintiff would prefer, and an order purporting to do so would raise grave federalism and separation-of-powers concerns without addressing the purported injury. *Maryland*, 151 F.4th at 212–13 ("[P]erhaps the plaintiff's requested relief would otherwise have the federal court act beyond its proper role in a system of separated powers and dual sovereignty with the states."). The Court should decline the Party's extraordinary invitation, reject the requested remedy, and dismiss the Complaint for lack of subject-matter jurisdiction.

## II. This Court's Prior Adjudication of This Statutory Scheme Governs the Party's Claims.

*SCGOP I* is not merely persuasive authority from a sister court. It is this Court's considered construction of these statutes, rendered in litigation the Party itself brought, after full briefing and argument, on a record the Party helped build. The Fourth Circuit confirmed that the Party "had standing to pursue the facial challenges that were rejected by the First Opinion," and it declined to disturb that ruling when raised by others because the Party "abandoned the case and has not appealed." *SCGOP II*, 604 F. App'x at 253.

The overlap is too significant to overlook. *SCGOP I* held that the open primary statutes did not impose constitutionally significant burdens on the Party's associational rights because

South Carolina supplies alternative methods of nomination, 824 F. Supp. 2d at 666–67; the Complaint's Counts I, II, and IV assert that they do impose such burdens. *SCGOP I* held that § 7-11-20 does not permit a party using the primary method to close it, and that a closing rule "would directly conflict with multiple provisions of Title 7," *id.* at 666; the Complaint's Count V asserts that § 7-9-20 makes such a rule effective. *SCGOP I* held that § 7-9-20's allocation of rule-adding authority to the state convention imposes at most "an insubstantial burden," *id.* at 667; the Complaint alleges that its rules are valid notwithstanding their adoption by the State Executive Committee, Compl. ¶¶ 40, 72. *SCGOP I* rejected the equal protection theory that South Carolina treats party members and others as identically entitled to shape a nomination, *id.* at 669–70; the Complaint's Count III restates it. And *SCGOP I* identified the state interests that sustain the scheme, *id.* at 671–72; the Complaint asserts that no such interests exist, Compl. ¶¶ 48, 56, 63.

The Party will likely note that it dismissed its claims in 2013 without prejudice and that *SCGOP I* resolved only the facial challenge. Neither observation helps it here. A dismissal without prejudice preserved the Party's ability to file a new action; it did not entitle the Party to a different answer to questions this Court has already answered. The considerations that ordinarily commend adherence to a prior ruling—consistency in the administration of a statewide election code, reliance by the State and by the electorate, and the orderly development of the law within this District—apply with unusual force where the same plaintiff returns to the same court with the same theory about the same statutes. And the label "as applied" does not change the analysis, because the Party pleads no facts that distinguish its situation from the one this Court considered in 2011. The only new fact the Complaint offers is the Party's recent adoption of Rules 11-A-6 and 11-A-7. That fact may bear on standing. It does not, however, have any bearing on whether South Carolina compels the Party to nominate by primary, which is the question *SCGOP I* and

*Miller II* (and South Carolina law) answer in the negative.

## III. The Party Fails to State a Claim That South Carolina Law Burdens Its Associational Rights (Counts I, II, and IV).

### A. South Carolina does not compel the Party to nominate by primary, and that fact alone defeats its compelled-association premise.

Every associational theory in the Complaint rests on a single proposition: that South Carolina "compels certified political parties . . . to open their primary elections to persons who are not members of the party." Compl. ¶ 15. The proposition is wrong as a matter of law, and the Fourth Circuit has said so.

*Miller II* addressed Virginia's open primary law. The court held it facially valid, reasoning that Virginia permitted nomination "not only by state-run primary but also by other methods controlled and funded by the party," so that "by merely choosing any of these other options, a party is free to limit its candidate selection process to voters who share its political views." 503 F.3d at 367. What made the schemes in *California Democratic Party v. Jones*, 530 U.S. 567 (2000), and *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986), constitutionally significant was that they were mandatory and exclusive. Virginia's was neither. As the court put it: "[B]ecause Virginia makes available to political parties multiple options for restricting their candidate selection process to individuals of their choosing, the refusal by the state to fund and operate a closed primary does not burden parties' right of association." *Miller II*, 503 F.3d at 368.

This Court applied that reasoning to these statutes and reached the same result. "Unlike the election laws in *Jones*, the South Carolina election laws challenged in this suit provide alternative mechanisms for political parties to access the general election ballot—political parties are free to use the convention method and, presumably, the petition method of nomination under South Carolina law." *SCGOP I*, 824 F. Supp. 2d at 664. "Under South Carolina law, political

parties may not be given the opportunity to conduct closed primaries, but neither are they forced to associate with those individuals with whom they choose not to associate. Any party is free to elect a different method of nomination, either by convention or petition, which allows political parties to associate with only those people approved for membership in the party." *Id.* at 666. That is the beginning and the end of Counts I, II, and IV.

**B. The Complaint pleads no facts about the alternatives South Carolina provides.**

Because the availability of an alternative is what defeats the compelled-association theory, a plaintiff who wishes to overcome *Miller II* and *SCGOP I* must plead facts showing that the alternatives are unavailable to it. This Complaint pleads none. It does not allege that the Party ever convened its state convention to vote on convention nomination, that any such vote occurred, or that it fell short of the three-fourths threshold. It does not allege that the Party ever sought to place the convention question before its primary electorate under § 7-11-30(A)(2). It does not allege that the Party ever attempted to nominate by petition under § 7-11-10(A), or that petition nomination is unavailable to it. It does not even acknowledge that § 7-11-30(D) relieves a party that has nominated by convention of any obligation to hold a primary to continue doing so. These omissions matter most with regard to the primary-approval condition of § 7-11-30(A)(2), which the General Assembly added after *SCGOP I* and which the Party never mentions.

The Complaint instead contends that "South Carolina law provides no viable alternative," a proposition it never supports with factual allegations. *Cf. SCGOP I*, 824 F. Supp. 2d at 660. Under *Iqbal* that conclusory claim is insufficient to overcome a Rule 12(b)(6) motion to dismiss. 556 U.S. at 678. A pleading that does not engage with the alternatives cannot establish that the alternatives South Carolina provides are foreclosed to the Party. And the omission is not a technicality. When this Court considered the same argument in 2011, it observed that "minor

political parties in South Carolina currently use the convention method in accordance with the statute and that Plaintiffs, themselves, have used the convention method in the past under the same statute," and concluded that it therefore had "no basis upon which to determine that the vote requirement is impossible or impractical." *SCGOP I*, 824 F. Supp. 2d at 670. The Party has given this Court no more today than it gave in 2011; it has given the Court considerably less.

The substantive framework is settled. Election regulations that impose a severe burden on associational rights receive strict scrutiny; those imposing lesser burdens are measured against "the State's important regulatory interests," which "are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451–52 (2008); *see Burdick v. Takushi*, 504 U.S. 428, 433–34 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). "[N]ot every electoral law that burdens associational rights is subject to strict scrutiny"; rather, "strict scrutiny is appropriate only if the burden is severe." *Clingman v. Beaver*, 544 U.S. 581, 592 (2005). The Fourth Circuit applies this continuum to South Carolina election statutes. *See S.C. Green Party v. S.C. State Election Comm'n*, 612 F.3d 752, 756 (4th Cir. 2010). The severity of the burden is the threshold question, and the plaintiff bears the burden of establishing it.

*Washington State Grange* counsels against speculating based on a bare pleading. A court "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases," 552 U.S. at 450, and challenges of this kind are disfavored because they "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution," *id.* at 451. The Party asks this Court to declare a statewide nomination scheme unconstitutional as applied to it without alleging that it ever tried to use an alternative method the scheme provides.

By failing to explore the very alternative mechanisms the statute provides, the Party not only undercuts their standing arguments but also underscores the implausible (and incomplete) nature of their claims.

### C. *Jones*, *Tashjian*, *Hurley*, and *Roberts* do not supply the Party's rule.

The Complaint leads with *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995), and *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), for the proposition that those decisions "established a political party's right to exclude non-members from its nomination process." Compl. at 2. Neither case involved a political party, a primary election, or a nomination process. *Hurley* held that Massachusetts could not require a private parade organizer to include a group whose message it did not wish to convey, 515 U.S. at 572–73, and *Roberts* upheld the application of a state public accommodations law to the Jaycees, 468 U.S. at 628–29. They state general principles of expressive association. They do not address whether a State must operate a closed primary at public expense.

*Jones* is closer but does not help. The Court there invalidated California's blanket primary, in which a single ballot listed every party's candidates and a voter could cross between parties office by office, and it did so because the scheme was "both mandatory and exclusive." 530 U.S. at 570, 577; *see Miller II*, 503 F.3d at 367. The Court took care to distinguish the blanket primary from "the open primary . . . in which the voter is limited to one party's ballot," and it expressly reserved the question: "This case does not require us to determine the constitutionality of open primaries." *Jones*, 530 U.S. at 577 n.8. South Carolina's primary is of the latter kind, and it is not exclusive: the Party may nominate by convention or by petition instead.

*Tashjian* runs the other way. There the Republican Party of Connecticut wished to *open* its primary to independents and the State forbade it; the Court struck the closed primary statute as

an interference with the party's associational choice. 479 U.S. at 224–25. *Tashjian* thus vindicates a party's right to admit those it wishes to admit. It does not oblige a State to exclude on a party's behalf. And *Clingman* confirms that the question is one of degree rather than category: Oklahoma's semi-closed primary survived *Anderson–Burdick* balancing because "not every electoral law that burdens associational rights is subject to strict scrutiny" and "strict scrutiny is appropriate only if the burden is severe." 544 U.S. at 592.

**D. *Miller II*'s as-applied holding and *Alcorn* confirm the distinction rather than undermine it.**

The Party may be expected to rely on the second half of *Miller II* and on *6th Congressional District Republican Committee v. Alcorn*, 913 F.3d 393 (4th Cir. 2019). Both decisions turn on a statutory feature South Carolina does not have.

In *Miller II*, the Fourth Circuit rejected the facial challenge to Virginia's open primary law but held that law unconstitutional as applied to the 11th Senatorial District Republican Committee. The reason was Virginia's Incumbent Protection Act, Va. Code Ann. § 24.2-509(B), which entitled an incumbent legislator to dictate the method by which his party would nominate a candidate for his seat. 503 F.3d at 363, 371. Because the incumbent had designated a primary, the Committee could not exercise the very opt-out that made the statute facially valid; the alternative existed in the abstract and was foreclosed in fact. *Alcorn* completed the work, holding the Incumbent Protection Act unconstitutional and enjoining it in its entirety. The vice the court identified was that the associational rights Virginia law otherwise "recognized and protected" were "taken away" and "given instead to a single individual—the incumbent," so that "the party's adherents are *entirely* shut out of the choice of nomination method." 913 F.3d at 403, 404–05.

South Carolina has no analogue. No incumbent, no officeholder, and no branch of state government may choose the Party's method of nomination. That choice belongs to the Party. *See*

S.C. Code Ann. §§ 7-9-10, 7-11-10(A), 7-11-30(A); *SCGOP II*, 604 F. App'x at 247. *Miller II* and *Alcorn* stand for the proposition that a State may not hand a party's associational choice to someone else. South Carolina has not done that, and the Party does not allege that it has.

**E. The recent Colorado decision is out-of-circuit, rests on an evidentiary record, and does not support the relief the Party seeks.**

On March 31, 2026, the United States District Court for the District of Colorado held Colo. Rev. Stat. § 1-4-702(1)—which requires a three-fourths vote of a party's state central committee to opt out of that State's semi-open primary—to impose a severe and unjustified burden on associational rights. *Colo. Republican Party v. Griswold*, 829 F. Supp. 3d 923 (D. Colo. 2026). The decision declined to follow *SCGOP I*'s analogy between an opt-out threshold and a ballot-access signature requirement. Four points place it in perspective.

First, it is a district court decision from outside this Circuit, and it binds no one here. Where it conflicts with *SCGOP I*, this Court's own construction of these statutes governs. Second, the court reached its severe-burden conclusion on an evidentiary record developed over nearly three years of litigation, including proof that in Colorado "more non-party members vote in a primary election than party members." No comparable allegation appears in this Complaint, much less proof, and the Party seeks judgment on a pleading rather than a record. Third, the premise of the Colorado court's reasoning aids the SEC Defendants: the court accepted that if a party "retained a reasonable ability to opt out," the associational burden "would not exist." The Party here has never attempted to opt out, and it does not allege that it cannot. Fourth, the Colorado court invalidated only the opt-out threshold; it left the semi-open primary framework standing, and it later declined, on deadline and *Purcell* grounds, to order the Secretary of State to withhold primary ballots from unaffiliated voters, *Colo. Republican Party v. Griswold*, No. 23-cv-01948-PAB-KAS, 2026 WL 1145559 (D. Colo. Apr. 28, 2026). Even on its own terms, that decision would not support the

declarations and the affirmative injunction the Party requests in Prayer ¶¶ B, C, E, and F.

**F. The scheme satisfies *Anderson–Burdick*.**

Because South Carolina does not compel the Party to nominate by primary, the burden the Complaint describes is not severe, and "the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Wash. State Grange*, 552 U.S. at 452. Those interests are substantial and, in this District, already identified: preserving the integrity of the nominating process, promoting fairness, increasing voter participation, and ensuring administrative efficiency. *SCGOP I*, 824 F. Supp. 2d at 671–72. The Supreme Court has recognized each of them. *See N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 203 (2008); *Am. Party of Tex. v. White*, 415 U.S. 767, 781 (1974); *Storer v. Brown*, 415 U.S. 724, 730 (1974); *Burdick*, 504 U.S. at 433. The State's additional interest here is concrete: South Carolina has no party-registration system, and the relief the Party seeks would require the SEC and forty-six county boards to build and administer one without legislative authorization, funding, or standards. Restrictions that apply identically to every certified party and every qualified elector are the paradigm of the "'evenhanded restrictions that protect the integrity and reliability of the electoral process itself'" that "are not invidious." *SCGOP I*, 824 F. Supp. 2d at 669 (quoting *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189–90 (2008)).

**G. Count II is duplicative, and Count IV identifies no unconstitutional condition.**

Count II alleges that the Party's nominee "communicates the party's political message" and that permitting nonmembers to participate in choosing that nominee compels the Party's speech. Compl. ¶¶ 52–55. The theory adds no independent force. It depends on the same premise as Count I—that South Carolina forces the Party to speak through a primary-selected nominee—and it fails for the same reason: the Party may nominate by convention and choose its standard-

bearer without a single nonmember's participation.

Count IV alleges that South Carolina "conditions access to the state-administered primary election process on Plaintiff Party's surrender of its associational right to exclude nonmembers." Compl. ¶ 66. An unconstitutional-conditions claim requires a benefit the government may not condition in the manner alleged. *Miller II* holds there is no such benefit: where a State "makes available to political parties multiple options for restricting their candidate selection process to individuals of their choosing, the refusal by the state to fund and operate a closed primary does not burden parties' right of association." 503 F.3d at 368. A State that declines to provide a benefit has not conditioned it. Count IV is *Miller II* restated as a conditions claim, and it fails on the authority that rejects it.

## IV. Count III Fails to State an Equal Protection Claim.

Count III alleges that South Carolina "gives nonmembers the same practical power as party members to determine Plaintiff Party's nominees" and thereby "treats party members and nonmembers as identically entitled to determine the Party's internal nomination decision." Compl. ¶¶ 60–61. That is the associational claim in different dress. In the primary context such a claim is analyzed under the same *Anderson–Burdick* framework and rises or falls with the First Amendment theory. *See Burdick*, 504 U.S. at 433–34; *S.C. Green Party*, 612 F.3d at 756. It falls with it here.

The claim also fails on its own terms. Equal protection requires "a discrimination against them of some substance," *Am. Party of Tex.*, 415 U.S. at 781, and "only those classifications which are invidious, arbitrary, or irrational offend the Equal Protection Clause," *Clements v. Fashing*, 457 U.S. 957, 967 (1982). Political parties are not a suspect class. *SCGOP I*, 824 F. Supp. 2d at 669. And the statutes the Party challenges draw no line between certified parties (or among

electors): "[t]o the extent that one party is required to meet the voting requirement in the convention nomination statute, all political parties are so required. Where one party is required to adhere to the statutes governing voter qualifications, all others share equally in the requirement." *Id.* at 670. Treating every qualified elector alike is not discrimination; it is the absence of it.

## V. Count V Fails Because § 7-9-20 Does Not Authorize the Party's Rules and Because the Eleventh Amendment Bars the Relief the Party Seeks.

Count V asks this Court to declare that S.C. Code Ann. § 7-9-20 authorizes the Party's closed-primary rules and that "Defendants must recognize and implement" them. Compl. ¶¶ 70–74; Prayer ¶ D. The count fails three times over.

*First*, the statute does not do what the Party says. Section 7-9-20 permits a state convention to add qualifications "if the qualifications do not conflict with the provisions of this section or with the Constitution and laws of this State or of the United States." A rule excluding qualified electors from a primary conflicts with the balance of Title 7—with § 7-9-20's own baseline qualifications, with the precinct lists § 7-5-420 requires the county boards to furnish, and with § 7-11-20(A)'s command that party rules not conflict with the title. This Court so held: "[a]ny party rule attempting to disallow a qualified elector whose name appears on the list provided to a precinct by the election commission from voting in the primary, or attempting to remove an elector's name from the list, would contradict State law." *SCGOP I*, 824 F. Supp. 2d at 666. The statute the Party invokes is the statute that defeats it.

*Second*, the Complaint's own allegations place the rules outside § 7-9-20's grant. The statute vests the rule-adding power in "[t]he state convention." The Complaint alleges that the State Executive Committee adopted Rules 11-A-6 and 11-A-7 on June 6, 2026, and that the Party "ratified" them in reconvened convention proceedings three weeks later. Compl. ¶ 40. Whether that sequence satisfies the statutory predicate, and whether the Party's own rules authorize it, are

questions the Complaint raises and does not answer. *Cf. SCGOP I*, 824 F. Supp. 2d at 667. The Party cannot rest a federal claim on a state-law authority whose conditions it has not pleaded satisfying.

*Third*, and independently, the Eleventh Amendment forecloses the relief. A federal court may not order state officials to conform their conduct to state law; *Ex parte Young* is "inapplicable in a suit against state officials on the basis of state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Count V asks for exactly that: a declaration construing § 7-9-20 and an order that the SEC Defendants "recognize and implement" the Party's reading of it. Relabeling the request as a claim under 42 U.S.C. § 1983 does not save it, because § 1983 secures rights "secured by the Constitution and laws" of the United States and supplies no remedy for a violation of state law. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Count V should be dismissed.

## VI. Count VI Identifies the Party's Requested Remedy, Not a Cause of Action.

Count VI seeks declaratory judgment under 28 U.S.C. §§ 2201–2202. The Declaratory Judgment Act is procedural; it "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction" and creates no substantive right. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *see Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014). The Act "is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights," and accordingly "[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011) (citations omitted). Because Counts I through V fail, Count VI fails with them.

## CONCLUSION

For the foregoing reasons, the SEC Defendants respectfully request that the Court dismiss the Party's Verified Complaint.

Respectfully submitted,

s/Thomas A. Limehouse, Jr.

Thomas A. Limehouse, Jr. (Fed. Bar No. 12148)
LIMEHOUSE LLC
174 East Bay Street, Suite 100 (P.O. Box 338)
Charleston, South Carolina 29401 (29402)
(843) 823-3833
Thomas@LimehouseLaw.com

*Counsel for the SEC Defendants*

September 3, 2026
Charleston, South Carolina