**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| SOUTH CAROLINA REPUBLICAN PARTY,<br><br>*Plaintiff,*<br><br>v.<br><br>ROBERT BOLCHOZ, in his official capacity as Chairman of the South Carolina State Election Commission; JOANNE DAY, CLIFFORD J. EDLER, SCOTT MOSELEY, and ANGELA STRINGER, in their official capacities as members of the South Carolina State Election Commission; and CONWAY BELANGIA, in his official capacity as Executive Director of the South Carolina State Election Commission,<br><br>*Defendants*. | Civil Action No.: 3:26-cv-02699-MGL<br><br>**SEC DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF No. 21)** |

Defendants Robert Bolchoz, in his official capacity as Chairman of the South Carolina State Election Commission ("SEC"); Joanne Day, Clifford J. Edler, Scott Moseley, and Angela Stringer, in their official capacities as members of the SEC; and Conway Belangia, in his official capacity as Executive Director of the SEC (collectively, "SEC Defendants"), respectfully submit this Reply in Support of the SEC Defendants' Motion to Dismiss (ECF No. 21) the South Carolina Republican Party's ("Party") Verified Complaint (ECF No. 1) ("Complaint").

## INTRODUCTION

The Party devotes a significant portion of its Memorandum in Opposition (ECF No. 24) ("Response") to rebutting arguments not raised in the SEC Defendants' Motion. In doing so, the Party both overlooks and fails to overcome the SEC Defendants' actual arguments in support of dismissing the Complaint.

Three key features of the Party's Response frame what follows: *First*, the Motion never asserted claim or issue preclusion. The words "res judicata," "collateral estoppel," "preclusion," and "privity" do not appear in the SEC Defendants' Motion. The Party nonetheless devotes much of its ink to defeating those defenses. Resp. at 10–11, 19–24. *Second*, the Motion argued that the Complaint failed to plead the requisite factual allegations related to the two alternative nomination methods available under South Carolina law, and the Response answers that argument by implying facts the Complaint does not contain. *Third*, the Motion advanced independent grounds that the Response ignores altogether, including the whole of Argument V, the state-law premise of Argument I, the treatment of *Hurley* and *Roberts*, and the various reasons Counts II, III, and IV collapse under their own weight.

On one dispositive point, the Party's Response supports the SEC Defendants' position. The Party has never sought a three-fourths convention vote. It has never placed the convention question before its primary electorate. It has never attempted a petition nomination. The Complaint does not allege otherwise, and neither does the Response. The Party knows how to address the issue of alternative nomination methods in its allegations, because it did just that over a decade ago when seeking similar relief. Just as Goldilocks could not sue to prohibit the production of porridge on account of elevated temperature without first trying the other options, the Party cannot plausibly contend that South Carolina's statutory scheme is unconstitutional without even pursuing the other nomination methods provided by law. *Cf. Marchioro v. Chaney*, 442 U.S. 191, 199 (1979) ("The fact that it did not choose such an alternative course is hardly the responsibility of the state legislature. The answer to appellants' claims of a substantial burden on First Amendment rights, then, turns out to be a simple one. There can be no complaint that the party's right to govern itself has been substantially burdened by statute when the source of the

complaint is the party's own decision . . . ."). The Court should grant the SEC Defendants' Motion and dismiss the Party's Complaint.

## ARGUMENT

### I. The Response addresses a preclusion defense the Motion never asserted.

Argument II of the Motion carries the heading "This Court's Prior Adjudication of This Statutory Scheme Governs the Party's Claims." Mot. at 13. It makes three points. This Court construed these statutes in litigation the Party itself brought, after full briefing, on a record the Party helped build. The Fourth Circuit confirmed that "the State Party had standing to pursue the facial challenges that were rejected by the First Opinion," that the State Party "then abandoned the case and has not appealed," and that it therefore "cannot disturb the First Opinion." *Greenville Cnty. Republican Party Exec. Comm. v. Greenville Cnty. Election Comm'n*, 604 F. App'x 244, 253 (4th Cir. 2015) ("*SCGOP II*"). The Party's Complaint pleads no facts distinguishing this action from the case this Court decided in 2011.

The Motion anticipated the Party's two responses and addressed them in advance. A dismissal without prejudice preserved the Party's ability to file a new action, but it did not entitle the Party to a different answer to questions this Court has already answered. Mot. at 14. And the label "as applied" does not change the analysis absent relevant factual allegations to distinguish the Party's current claims. *Id.* The Response never engages with these substantive points.

The Party instead dedicates six pages to *Andrews v. Daw*, 201 F.3d 521 (4th Cir. 2000), *Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219 (4th Cir. 1998), *Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007) (en banc), and *Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999), each addressed to whether a court may resolve an affirmative defense at the pleading stage. Resp. at 10–11, 19–24. That is a response, but not to the SEC Defendants' arguments. The SEC

Defendants do not ask this Court to hold the Party's claims precluded. They ask this Court to apply its own construction of these statutes to a new complaint that provides no reason or plausible basis to depart from it.

The Response opens by telling this Court that the SEC Defendants allege, "inaccurately, that the same claims were brought previously, approximately 15 years ago, and that the relief sought by the Party therein was ultimately denied by the Fourth Circuit Court of Appeals." Resp. at 1. The Motion made no such point. The SEC Defendants noted that this Court rejected substantially the same attack on effectively the same statutory scheme, *Greenville Cnty. Republican Party Exec. Comm. v. South Carolina*, 824 F. Supp. 2d 655, 666–67 (D.S.C. 2011) ("*SCGOP I*"), and that the Party later abandoned the litigation rather than appeal, *SCGOP II*, 604 F. App'x at 251, 253. Both statements are accurate, and the Response disputes neither one.

The Party also concedes two key points that support the SEC Defendants' position. It concedes that *SCGOP I* held South Carolina's open primary laws facially valid because parties "retained alternative nomination methods, including convention nomination and petition nomination." Resp. at 21. And it concedes that this Court "rejected the argument that section 7-11-20 itself authorized a closed primary contrary to other provisions of Title 7, holding that party rules concerning primaries must remain consistent with South Carolina election law." *Id.* at 15. Those concessions dispose of Counts I, II, IV, and V.

## II. The Complaint does not address the statutory alternatives, and the Response does not attempt to fix the flaw.

### A. The Party has previously pleaded the alternatives, and its silence now speaks volumes.

The Response treats the Motion's pleading argument as a technicality that a developed record will answer. The Party's own litigation history shows otherwise. The Party has twice put

the adequacy of South Carolina's alternative nomination methods squarely at issue, in detail, in pleadings before this Court.

In its 2010 Complaint, the Party invoked S.C. Code Ann. § 7-11-30 thirteen times and used the word "convention" twenty times. Compl., *Greenville Cnty. Republican Party Exec. Comm. v. South Carolina*, No. 6:10-cv-01407 (D.S.C. June 1, 2010), ECF No. 1. In its 2012 Amended Complaint, the Party invoked § 7-11-30 fifteen times and used the word "convention" forty-three times. Am. Compl., *id.* (Jan. 6, 2012), ECF No. 75. Each pleading discussed the "firehouse primary" and *Miller v. Brown*. And the 2012 Amended Complaint alleged, in terms, that the parties "cannot nominate candidates by petition." *Id.* ¶ 45. The 2012 pleading even carried a heading reading "The South Carolina Code Already Authorizes a Closed Primary," and it asked this Court to declare that § 7-11-20 "already authorizes" closed primaries. *Id.* ¶¶ 77–79, 113 & Prayer ¶ B. This Court rejected that request. *SCGOP I*, 824 F. Supp. 2d at 666.

Now compare the 2026 Complaint, which the Party drafted with this Court's 2011 decision in hand. It invokes § 7-11-30 once, in Prayer ¶ E, and no paragraph in the body states what that statute requires. It uses the word "convention" five times, each time describing the Party's internal governance rather than identifying conventions as an alternate nomination method. *See* Compl. ¶¶ 40, 72. It uses the word "petition" once, in the phrase "speech, assembly, and petition rights." *Id.* ¶ 13. It never mentions the firehouse primary. It never cites *Miller v. Brown*. It says nothing about either alternative method of nomination.

The omission is deliberate, and it is fatal. A party that pleaded the convention route across dozens of paragraphs in 2012, and that alleged the unavailability of petition nomination in so many words, cannot credibly say that the subject requires discovery. It can say only that it chose not to plead it, because pleading it would have required the Party to allege an attempt it never made.

*Iqbal* does not authorize a "wait-and-see" approach to pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The Party also supplies the vehicle for this comparison: the Response concedes that this Court "may take judicial notice of its own records and of prior judicial proceedings" for the purpose of "recognizing the existence, contents, and disposition of those proceedings." Resp. at 10 (citing *Andrews*, 201 F.3d at 524 n.1). The Court should do so here.

### B. The Response asserts no attempted alternate nomination method, and a brief cannot amend a complaint.

The Response's central new contention is that the primary-approval condition of § 7-11-30(A)(2) "materially constrains [the Party's] institutional choice in a way that the statutory regime considered in 2011 did not." Resp. at 19. No allegation in the Complaint makes this argument or anything like it, and "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

Even taken as argument, the Response asserts no attempt. It does not say the Party convened its state convention on the question, that any vote occurred, that a vote fell short, that the Party sought a primary referendum, or that the Party tried to nominate by petition. A party seeking prospective relief must allege a credible threat that the challenged scheme will be enforced against it. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–62 (2014). The Party has not adopted its rules, sought to administer a primary under them, and met a refusal. It has adopted rules and asked this Court to invalidate the State's administration before any conflict has arisen.

### C. Subsections (B) and (D) of § 7-11-30 answer the two-stage argument.

The Party describes § 7-11-30 as imposing a recurring toll that effectively gives its primary electorate a standing veto. Resp. at 19, 21. The statute says otherwise, and the Response never addresses the subsection that says so. Subsection (D) provides that "[n]othing in this section

requires a political party that has nominated candidates by convention in the previous election cycle to hold a primary." S.C. Code Ann. § 7-11-30(D). The three-fourths vote and the primary-approval condition operate once. A party can nominate by convention thereafter without returning to its primary electorate for permission. The Motion made this point twice. Mot. at 4, 16. The Response does not mention subsection (D) at all.

Subsection (B) supplies a second answer. It prevents a party from changing methods during a cycle in which the candidate filing period has already opened. § 7-11-30(B). That is an ordinary timing rule, and it bears on this case only because the Party has never started the process in any cycle since *SCGOP I*. The Party also describes § 7-11-30 as reaching "covered offices," Resp. at 3, which implies a limited application. Subsection (A), however, reaches "all offices," and it names, "but [is] not limited to," Governor, United States Senator, United States House of Representatives, Circuit Solicitor, State Senator, and members of the State House of Representatives. *Id.* § 7-11-30(A).

Petition nomination carries neither condition. *Id.* § 7-11-10(A). The Party responds by stating only that the statute "does not, however, standing alone, establish that petition nomination is an equivalent mechanism." Resp. at 19. Aside from the fact that the General Assembly does not bear the burden of pleading or proof, the Party's argument implies that a future record would support an allegation not raised in the Complaint. The Court should not credit such speculation or shift a burden not met.

**D. The Fourth Circuit has twice rejected the causation theory the Response advances.**

The Response reads *Miller v. Brown*, 503 F.3d 360 (4th Cir. 2007) ("*Miller II*"), and *6th Congressional District Republican Committee v. Alcorn*, 913 F.3d 393 (4th Cir. 2019), to "direct attention to whether the Party retains a real, institutionally controlled alternative" and to require

this Court to inquire about "who actually controls the choice." Resp. at 17. On that test the Party loses. Virginia's Incumbent Protection Act gave the choice of nomination method to "a single individual" whose "personal interest was self-evident," so that "the party's adherents are entirely shut out of the choice of nomination method." *Alcorn*, 913 F.3d at 403, 404–05. South Carolina vests the choice in the Party. No incumbent, officeholder, or state agency selects the Party's method of nomination. A condition the Party must satisfy once, through its own convention and its own primary electorate, does not transfer the Party's choice to a third party.

The Fourth Circuit has, at least twice, held that an injury arising from a party's own choices is not traceable to the State. In *24th Senatorial District Republican Committee v. Alcorn*, 820 F.3d 624 (4th Cir. 2016), the court held that a Republican committee lacked standing to challenge the Incumbent Protection Act because its injury flowed not from the Act but from the Virginia Republican Party's own voluntary decision to delegate nomination authority subject to state law. 820 F.3d at 632–33. And in *SCGOP II* the court held that this Party's county affiliate could not establish traceability, distinguishing *Miller v. Brown*, 462 F.3d 312 (4th Cir. 2006), on the ground that "[w]hen *Miller* was decided . . . the Virginia Republican Party had" already amended its plan of organization. 604 F. App'x at 255–56 (citing *Miller*, 462 F.3d at 316). The Response relies on that same page of *Miller* for its standing theory. Resp. at 6, 8.

This Court has already applied that principle to this Party. Dismissing the remainder of the earlier action for lack of standing, the Court held that the Party's platform preference for closed primaries was overridden by the Party's own rules and conduct, and it observed that Rule 2(b) of the Party's rules deferred to South Carolina election law except where a court has declared that law unconstitutional. *Greenville Cnty. Republican Party Exec. Comm. v. Way*, No. CV 6:10-1407-MGL, 2013 WL 12385313, at *8 (D.S.C. Aug. 30, 2013).

*Marshall v. Meadows* states the principle directly: "it is not the Open Primary Law that is the cause of the plaintiffs' alleged injury" but rather "the decision of the Virginia Republican Party to conduct an 'open' primary," and the plaintiffs "have not demonstrated that their alleged injury can be redressed." 105 F.3d 904, 906–07 (4th Cir. 1997). The Response claims that the Party simply "wants to enforce its own affiliation rules," Resp. at 7, but wanting to enforce a rule is not the same as invoking the statutory mechanism that would permit it.

## III. The Response concedes that the Complaint pleads no facts on severity.

The Response states that whether the alleged burden "is severe, moderate, or minor depends on the factual record concerning the Party's adopted rules, Defendants' administration of the primary system, and the practical effect of compelled nonmember participation." Resp. at 13. It states that this Court "need not decide disputed factual questions concerning" whether "statutory alternatives meaningfully preserve the Party's associational choice." *Id.* at 14. And it states that the adequacy of either alternative "must be evaluated under the current statutory scheme and the present allegations, not assumed from the existence of statutory labels." *Id.* at 19.

Those statements concede the Motion. Severity is the threshold question under *Anderson–Burdick*, and the plaintiff carries the burden of establishing it. "[N]ot every electoral law that burdens associational rights is subject to strict scrutiny"; rather, "strict scrutiny is appropriate only if the burden is severe." *Clingman v. Beaver*, 544 U.S. 581, 592 (2005). A complaint that pleads no facts bearing on severity states no claim, and a brief announcing that severity must await a developed record concedes the deficiency instead of curing it. The Party cannot simultaneously maintain that the Complaint states a plausible claim and that the element on which the claim turns cannot be assessed without developing a record. *Lynchburg Republican City Comm. v. Virginia Dep't of Elections*, 793 F. Supp. 3d 765, 786 (W.D. Va. 2025) ("But the Committee's complaint is

barren as to considerations of expediency or hardship. The Committee raises its arguments about constrained timelines only in its response to the motion to dismiss.").

*Washington State Grange* forecloses the Party's invitation to supply the missing facts by inference. A court "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." 552 U.S. 442, 450 (2008). That caution applies with at least equal force where a party asks this Court to find an as-applied burden it has declined to describe. This Court reached the same conclusion on a fuller record in 2011, finding "no basis upon which to determine that the vote requirement is impossible or impractical." *SCGOP I*, 824 F. Supp. 2d at 670. The Party offers less today than it offered then, and what it does offer is speculative and contingent. *See Lynchburg Republican City Comm. v. Va. Dep't of Elections*, 793 F. Supp. 3d 765, 789 (W.D. Va. 2025) ("any hardship the Committee faces is far outweighed by the lack of judicial fitness on the merits. The Committee brings an as-applied challenge . . . but the resulting legal inquiry would turn on facts that are not yet in the record and, indeed, may never arise.").

## IV. *Jones* and *Tashjian* do not supply the Party's rule, and the Response abandons the Complaint's lead authorities.

The Response builds its first argument on *California Democratic Party v. Jones*, but it does so without acknowledging footnote 8: "This case does not require us to determine the constitutionality of open primaries." 530 U.S. 567, 577 n.8 (2000). The Motion quoted that footnote. Mot. at 18. The Response does not mention it. *Jones* invalidated a blanket primary that was "both mandatory and exclusive." *Id.* at 570, 577. South Carolina's primary is neither.

The Response calls *Tashjian* "a constitutional mirror image of this case," concedes that "[t]he direction of the compelled association is different," and then asserts that "the controlling constitutional question is the same." Resp. at 30. The concession answers the assertion. *Tashjian*

holds that a State may not stop a party from admitting those it wishes to admit. 479 U.S. 208, 224–25 (1986). It does not require a State to exclude on a party's behalf. *Miller II* holds that a State's "refusal . . . to fund and operate a closed primary does not burden parties' right of association" where the State "makes available to political parties multiple options for restricting their candidate selection process to individuals of their choosing." 503 F.3d at 368.

The Complaint leads with *Hurley* and *Roberts* for the proposition that those decisions "established a political party's right to exclude non-members from its nomination process." Compl. at 2. The Motion showed that neither case involved a political party, a primary election, or a nomination process. Mot. at 18. The Response rightly abandons its reliance on both authorities.

**V. The Response does not defend Prayer ¶ F or the premise of Argument I.**

Argument I sought dismissal of Prayer ¶ F, which asks this Court to order the SEC Defendants to build a statewide party-registration system. The Response does not defend that request. It argues instead that "the possible need to tailor one requested remedy does not eliminate Plaintiff's standing to seek other prospective relief," and it asks this Court to "evaluate standing and redressability claim by claim and remedy by remedy." Resp. at 27. The SEC Defendants accept that framing, because it leads the Court to the result the Motion requested. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Prayer ¶ F fails that test, and the Party no longer contends otherwise.

The Response also leaves the premise of Argument I untouched. The SEC maintains the rolls the General Assembly prescribes, §§ 7-5-110, 7-5-186; its powers are those "enumerated in

this title," § 7-3-10(D); its duty is to ensure compliance with applicable election law, § 7-3-10(G); and "[a]n administrative agency must follow the law as written until its constitutionality is judicially determined." *Beaufort Cnty. Bd. of Educ. v. Lighthouse Charter Sch. Comm.*, 335 S.C. 230, 241, 516 S.E.2d 655, 660–61 (1999); *accord Al-Shabazz v. State*, 338 S.C. 354, 381 n.12, 527 S.E.2d 742, 757 n.12 (2000); *O'Shields v. Caldwell*, 207 S.C. 194, 217, 35 S.E.2d 184, 193 (1945). The Response cites none of those statutes and none of those cases. Nor does it address *Maryland v. U.S. Department of Agriculture*, 151 F.4th 197, 212–13 (4th Cir. 2025). The Fourth Circuit has held that a plaintiff "cannot establish Article III standing when the alleged injury stems originally from the law complained of but its effect is mediated by a third party, or where the court is uncertain whether the injury would be removed were it to rule in the plaintiff's favor." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013). Here the intervening actor is the General Assembly.

The Response's four pages on *Ex parte Young* and *Verizon Maryland* seemingly address yet another argument the Motion did not make. The Motion invoked the Eleventh Amendment once, as to Count V, and it did so under *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984). Mot. at 24. The Response mentions neither *Pennhurst* nor *Baker v. McCollan*, 443 U.S. 137, 146 (1979).

**VI. The Party Does Not Counter the Motion as to Counts II, III, IV, and V, and Concedes Count VI.**

*Count V*. The Motion advanced three independent grounds: (1) that § 7-9-20's no-conflict proviso defeats the Party's rules rather than authorizing them, as this Court held, *SCGOP I*, 824 F. Supp. 2d at 666; (2) that the Complaint's own allegation of adoption by the State Executive Committee places the rules outside a grant of authority the statute vests in "[t]he state convention," Compl. ¶ 40; and (3) that *Pennhurst* and *Baker* foreclose an order directing state officials to

conform their conduct to state law. The Response answers none of them. It mentions § 7-9-20 once, and only to describe what *SCGOP I* held about it. Resp. at 21. The Court should dismiss Count V because all three grounds stand unrebutted.

*Count III*. The Response's single authority states the element the Complaint omits. *Morrison v. Garraghty* requires a plaintiff to show that he was "treated differently from others with whom he is similarly situated" and "that the unequal treatment was the result of intentional or purposeful discrimination." 239 F.3d 648, 654 (4th Cir. 2001). The Complaint alleges no intentional or purposeful discrimination and identifies no similarly situated party that South Carolina treats differently. The Response also leaves untouched each ground on which the Motion argued that Count III fails independently: that political parties are not a suspect class, *SCGOP I*, 824 F. Supp. 2d at 669; that "only those classifications which are invidious, arbitrary, or irrational offend the Equal Protection Clause," *Clements v. Fashing*, 457 U.S. 957, 967 (1982); and that the challenged statutes draw no line among certified parties or among electors, *SCGOP I*, 824 F. Supp. 2d at 670.

*Counts II and IV*. The Party's Response does not address either count or the Motion's identification of their flaws. The phrase "unconstitutional condition" appears nowhere in the Response, and the Motion's argument stands unanswered. *Miller II*, 503 F.3d at 368.

*Count VI*. The Party "does not oppose treatment of Count VI as remedial rather than substantive" and agrees that this Court "need not maintain Count VI as a separate standalone cause of action." Resp. at 30–31. The Court should dismiss Count VI as an independent cause of action. Declaratory relief remains available as a remedy if any substantive count survives, which has always been the SEC Defendants' position. *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011).

## CONCLUSION

For the foregoing reasons, the SEC Defendants respectfully request that the Court grant the Motion and dismiss the Party's Complaint.*

Respectfully submitted,

s/Thomas A. Limehouse, Jr.

Thomas A. Limehouse, Jr. (Fed. Bar No. 12148)
LIMEHOUSE LLC
174 East Bay Street, Suite 100 (P.O. Box 338)
Charleston, South Carolina 29401 (29402)
(843) 823-3833
Thomas@LimehouseLaw.com

*Counsel for the SEC Defendants*

September 24, 2026
Charleston, South Carolina

* The Party concludes its Response by requesting "leave to amend any pleading deficiency that the Court in its wisdom may identify." Resp. 31. That is not a motion. In *Cozzarelli v. Inspire Pharmaceuticals, Inc.*, the Fourth Circuit held that requests for leave to amend appearing in a footnote and in a brief's closing sentence "did not qualify as motions for leave to amend," and that it "cannot say that the district court abused its discretion by declining to grant a motion that was never properly made." 549 F.3d 618, 630–31 (4th Cir. 2008). The plaintiffs there had "never filed a motion for leave to amend before the district court, nor did they present the district court with a proposed amended complaint." *Id.* at 630. The same goes for the Party.